IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY – At Covington

| | | |
|---|---|---|
| Dr. AMY DICHIARA | : | Case No. |
| 10011 Meiman Dr. | | |
| Union, KY 41091 | : | |
| | | |
| Plaintiff | : | |
| | | |
| v. | : | |
| | | |
| SUMMIT MEDICAL GROUP, INC. | : | |
| d/b/a St. Elizabeth Physicians | | |
| c/o Robert M. Hoffer (registered agent) | : | |
| 109 East Fourth Street | | |
| Covington, KY 41011 | : | |
| | | |
| and | : | |
| | | |
| ST. ELIZABETH MEDICAL CENTER, INC. | : | |
| d/b/a St. Elizabeth Healthcare | | |
| c/o Robert M. Hoffer (registered agent) | : | |
| 109 East Fourth Street | | |
| Covington, KY 41011 | : | |
| | | |
| and | : | |
| | | |
| Dr. ROBERT PRICHARD | : | |
| 1 Medical Village Dr. | | |
| Edgewood, KY 41017 | : | |
| | | |
| and | : | |
| | | |
| GARREN COLVIN | : | |
| 1 Medical Village Dr. | | |
| Edgewood, KY 41017 | : | |
| | | |
| Defendants | : | |

**PLAINTIFF'S VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

Plaintiff, through Counsel, for her Complaint, states as follows:

**Parties**

1

1. Plaintiff Dr. Amy DiChiara, M.D. (hereinafter "Plaintiff") is a resident of Boone County, Kentucky, in this district and division. She is a licensed physician, with a specialty practice in gastroenterology.

2. Defendant, Summit Medical Group, Inc., doing business as St. Elizabeth Physicians (hereinafter "SEP"), is a Kentucky corporation with its headquarters in Erlanger, Kentucky, and is located in this district and division. Among other things, it operates by, and is responsible for, employing a number of physicians who operate in and through the St. Elizabeth Hospital system.

3. Upon information and belief, SEP employs more than 500 persons, is an "employer" within the meaning and definition of 42 U.S.C. 2000e(b), 42 U.S.C. 12111(5)(A), and is an "employer" within the meaning and definition of KRS 344.030(2).

4. Defendant, St. Elizabeth Medical Center, Inc. ("St. E"), is also a Kentucky corporation, is located in this district and division, and it operates a number of hospitals.

5. Upon information and belief, St. E employs more than 500 persons, is an "employer" within the meaning and definition of 42 U.S.C. 2000e(b), 42 U.S.C. 12111(5)(A), and is an "employer" within the meaning and definition of KRS 344.030(2).

6. Defendant, Dr. Robert Prichard, M.D. ("Prichard"), is the former CEO of SEP, but was, at all times relevant hereto, acting as the CEO of SEP.

7. Defendant, Garren Colvin ("Colvin"), is, and was at all times relevant hereto, the CEO and President of St. E.

**Jurisdiction and Venue**

8. Jurisdiction is conferred on this Court by 28 U.S.C. §1331; 28 U.S.C. §1367; 42 U.S.C. 2000e(f)(3); and 42 U.S.C. 12117.

9. Plaintiff's state law claims are related to her federal law claims in that all of the claims form a single case and controversy under Article III of the United States Constitution.

10. The events, transactions, and occurrences relevant to this lawsuit have arisen within the geographical environs of the Eastern District of Kentucky and this division. Therefore, venue is proper in this Court and this division under 28 U.S.C. 1291(b)(1) and (b)(2).

**Facts applicable to all claims**

11. Plaintiff reincorporates the foregoing allegations as if fully written herein.

12. Plaintiff began employment with Defendant SEP as a physician performing gastroenterology services, on approximately January 1, 2013, pursuant to a certain written agreement, a true and accurate copy of which is attached as <u>Exhibit 1</u> hereto (the "Agreement"). SEP drafted the Agreement and presented it to Plaintiff on a take-it-or-leave-it basis.

13. Plaintiff was an "employee" of SEP, as that term is defined in 42 U.S.C. 2000e(f).

14. Among other things, Paragraph 10.1 of the Agreement contains a provision for termination without cause, with at least 90 days written notice to the other party. It also contains a provision requiring Defendant SEP to continue Plaintiff's compensation during that 90-day period.

15. Among other things, Paragraph 10.2 of the Agreement contains a provision for immediate terminations without cause, but only for the reasons specifically listed in the Agreement.

16. Among other things, Paragraph 11.1, of the Agreement contains a non-compete provision. It was an attempt by Defendant SEP to restrict Plaintiff from practicing medicine for one year within 20 air miles of any St. E or SEP facility where the Physician previously practiced medicine.

17. Excluded from the application of the non-compete provision contained in Paragraph 11.1 were terminations without cause by Defendant SEP, terminations for cause by the Physician, or automatic terminations. Said another way, the non-compete provision only applied if Defendant SEP terminated the Agreement for cause.

18. Among other things, Paragraph 12 of the Agreement provides that the Agreement will be construed in connection with, and not contrary to, federal and state laws.

19. The Agreement continued in force, both under its terms, and then pursuant to automatic renewals, from January, 2013, through at least September, 2021.

20. Defendants St. E. and SEP are interrelated entities sharing, among other things, common policies, practices and governance, and coordination between executives.

21. A primary function of Defendant SEP is to provide physicians who perform services at hospital facilities run and operated by Defendant St. E.

22. On or about August 5, 2021, Defendants St. E. and SEP implemented a mandatory vaccination policy related to COVID-19 ("Vaccine Mandate").

23. Plaintiff had, and continues to have, a sincerely held religious belief concerning the approved COVID-19 vaccines, all of which utilize aborted fetal cells in their development, production and/or testing (to include confirmation testing).

24. Plaintiff had, and continues to have, moral and ethical concerns about the Vaccine Mandate. These concerns include, among other things, the risks to those with medical contraindications and disabilities, and the unjust pressure on those with sincerely held religious beliefs to violate their consciences.

25. In early August, 2021, Plaintiff communicated these and other concerns to both Defendants Prichard and Colvin; in late August, 2021, Plaintiff participated in a joint letter with other physicians who shared these concerns to both Prichard and Colvin.

26. In point of fact, all approved COVID-19 vaccines in 2021 had or utilized aborted fetal cells in their development, production, and/or testing (to include confirmation testing).

27. On or about August 7, 2021, Plaintiff began communicating with representatives of the law firm Deters & Associates ("Deters Firm"), concerning, among other things, the Vaccine Mandate, Plaintiff's sincerely held religious beliefs, accommodation of her beliefs and her rights under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII," codified at 42 U.S.C. § 2000e, *et. seq.*).

28. Plaintiff knew and understood that the Deters Firm was potentially going to pursue a lawsuit in aid of those with disabilities (i.e. persons with valid medical conditions that were contraindications for taking the vaccine) and in aid of those with sincerely held religious beliefs regarding the Vaccine Mandate.

29. Plaintiff had been sent an engagement agreement to sign by the Deters Firm.

30. At this time, Plaintiff was unaware of any specific circumstances of Eric Deters relative to his law firm, law practice, or law license, but understood that Mr. Deters was acting as the agent for attorneys employed by the Deters Firm.

31. Among other things, by approximately mid-August, 2021, Plaintiff provided the Deters Firm certain documents related to the potential claims and Plaintiff's rights under Title VII. All of these documents would be helpful and useful in prosecuting claims under Title VII, the Americans with Disabilities Act (hereinafter "ADA," codified at 42 U.S.C. § 12101, *et. seq.*), and claims under Chapter 344 of the Kentucky Revised Statutes ("Chapter 344").

32. At and prior to the time Plaintiff sent any materials to the Deters Firm, the Deters Firm was investigating on behalf of employees of St. E and SEP, potential claims against Defendants St. E and SEP, relative to the Vaccine Mandate, under Title VII and the ADA and any other applicable law, including KRS Chapter 344.

33. At and prior to the time Plaintiff sent any materials to the Deters Firm, Plaintiff had a reasonable and good faith belief that Defendants, Prichard, Colvin, St. E., and SEP were violating federal and state law, including Title VII, the ADA, and KRS Chapter 344.

34. Some of the materials that Plaintiff shared with the Deters Firm related to the concepts of vaccine efficacy and natural immunity.

35. Other materials related to the processing of exemption requests based on religious objections and disability contraindications.

36. Other materials consisted of internal communications that could be useful in developing a punitive damage claim against Defendants St. E and/or SEP in a Title VII, ADA, or KRS Chapter 344 claim.

37. The Deters Firm filed a lawsuit on behalf of employees of Defendants SEP and St. E (which sought class status for all employees) on or about August 23, 2021 in the Boone Circuit Court, styled *Beckerich, et. al. v. Saint Elizabeth Medical Center, et. al.*, 21-Cl-1023 (the "lawsuit"). The lawsuit contained, among other things, numerous allegations related to disabilities of employees and religious beliefs of employees, exemptions/reasonable accommodations, and the handling of same, and all for the purpose of raising claims under

the ADA, Title VII, and Chapter 344 (see Para. 355,379,403,420,493, 502-516, 560, 568, 609).[1]

38. The filing of the lawsuit constituted protected activity under both the ADA (42 U.S.C. § 12203), Title VII (42 U.S.C. § 2000e–3), and KRS Chapter 344 (KRS 344.280(1)).

39. The lawsuit was removed to this court, as *Beckerich, et. al. v. Saint Elizabeth Medical Center*, et. al. Case No. 2:2 l-cv-00100, but was voluntarily dismissed on or about August 30, 2021.

40. The lawsuit was then refiled on September 3, 2021, as *Beckerich, et. al. v. Saint Elizabeth Medical Center, et. al.*, Case No. 2:21-cv-00105 (hereinafter "*Beckerich II*"), again, on behalf of certain employees of Defendants St. E and SEP.

41. The filing of *Beckerich II* constituted protected activity under both the ADA (42 U.S.C. § 12203), Title VII (42 U.S.C. § 2000e–3), and KRS Chapter 344 (KRS 344.280(1)).

42. The Complaint in *Beckerich II*, filed on September 3, 2021, utilized, without Plaintiff's approval, certain of the documents Plaintiff had provided to the Deters Firm in the complaint itself.

43. For instance, and without limitation, in an effort to demonstrate that accommodating religious beliefs relative to the Vaccine Mandate would not pose an undue hardship upon the employer in a Title VII claim under 42 U.S.C. § 2000e(j), efficacy of vaccination, natural immunity from infection, and related concepts would be important factors to demonstrate. Said another way, if a vaccine was ineffective, an employer would not be burdened at all to exempt those with sincerely held religious beliefs and those with medical contraindications.

---

[1] Admittedly, the lawsuit was not a model of clarity, but it should be viewed under Kentucky state court liberal pleading standards.

7

And, if natural immunity from previous infection was equal to vaccine-derived immunity, there would be no reason not to exempt the naturally immune from the Vaccine Mandate.

44. Similarly, in an ADA claim, undue hardship to an employer in a reasonable accommodation case is a factor under 42 U.S.C. § 12111(10) and 42 U.S.C. § 12111(b)(5).

45. In the same way, in a KRS Chapter 344 claim, whether a particular accommodation constitutes an undue burden upon an employer is a factor in both disability and religious discrimination claims pursuant to KRS 344.040(1)(a) and (b); 344.030(1),(6),(7), and (9).

46. The Complaint in *Beckerich II* specifically alleged claims under the ADA/Rehabilitation Act (Count 1, Para. 434-439), and Title VII (Count 2, Para. 440-447).

47. In the period between September 3, 2021 and the end of September, 2021 Defendant SEP, by and through its CEO, Defendant Prichard, demanded Plaintiff turn over privileged materials that were between her and the Deters Firm. Defendant Prichard, as well as counsel for Defendants St. E and SEP, acting pursuant to their assigned roles as agents for both, threatened Plaintiff's employment if she did not turn over the privileged documents and communications. This occurred more than once.

48. On September 13, 2021, Plaintiff made a formal documented request for a religious exemption to the Vaccine Mandate through the SEP process that had been established, citing her sincerely held religious beliefs. That request for accommodation and exemption was approved on September 20, 2021.

49. Thereafter, in the period between September 3, 2021, and October 4, 2021, upon information and belief, Defendants Colvin and Prichard met one or more times to discuss the continued employment of the Plaintiff, and both decided, in concert, to unlawfully terminate her

8

employment as a result of Plaintiff having provided documents to the Deters Firm in aid of claims under Title VII, the ADA, and KRS Chapter 344.

50. On October 4, 2021, mere days after obtaining her request for an religious accommodation to the Vaccination Mandate, Plaintiff was terminated by Defendant Prichard, and upon information and belief, this termination was at the direction of both Defendants Prichard and Colvin.

51. A true and accurate copy of the Termination Letter is attached as <u>Exhibit 2</u>.

52. The Termination Letter is a startling admission of illegality on the part of Defendants Prichard, St. E., SEP, and Colvin. In it, Defendant Prichard admits terminating Plaintiff for providing information to the Deters Firm in furtherance of that firm's pursuit of Title VII and ADA claims. Specifically, Defendant Prichard wrote:

> By disclosing internal emails between us and between you and Garren Colvin to an outside third party without consent or authorization, which emails are the property of SEP, you misappropriated SEP property.
> …
> Your unauthorized disclosure of the subject emails to a law office which already had sued SEP and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits, constituted disruptive and unprofessional conduct on your part.

53. The Termination letter purported to be a termination for cause under Paragraph 10.2 of the Agreement, which would trigger the non-compete provisions in Paragraph 11.1 of the Agreement.

54. Thereafter, through Counsel, Plaintiff sought relief from the non-compete provision, but Defendant SEP maintained its stance that the non-compete provision applied and would be vigorously enforced.

55. On or about October 8, 2021, Plaintiff caused a charge of discrimination to be sent to the United States Equal Employment Commission ("EEOC"), a true and accurate copy of which

9

is attached as <u>Exhibit 3</u>, which includes charges of religious discrimination, and retaliation charges for disability and religious discrimination.

56. On or about August 18, 2022, the EEOC, without finishing its investigation, issued a right to sue letter to Plaintiff, a true and accurate copy of which is attached as <u>Exhibit 4.</u>

**COUNT I – Title VII and ADA Retaliation**

57. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

58. Plaintiff's provision of documents to the Deters Firm done in aid or support of claims under Title VII, the ADA, and KRS 344 constituted protected activity under those sections.

59. Specifically, 42 U.S.C. 2000e-3 makes it "an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

60. Further, 42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

61. Further, 42 U.S.C. § 12203(b) provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

62. Defendant SEP violated 42 U.S.C. 2000e-3, by taking adverse action, viz. the termination of the Plaintiff on or about October 4, 2021, after, and as a result of, her: (i) opposing a practice made an unlawful employment practice under Title VII; and (ii) assisting or participating in any manner in an investigation, proceeding, or hearing, under Title VII, including, without limitation, by her actions that preceded *Beckerich II*, as well as the submission of her request for a religious accommodation to the Vaccine Mandate.

63. Defendants SEP, St. E, Prichard, and Colvin, violated 42 U.S.C. § 12203(a), when they collectively conspired to, and then, took adverse action, viz. the termination of the Plaintiff on or about October 4, 2021, after, and as a result of, her: (i) opposing a practice made an unlawful employment practice under the ADA; and (ii) assisting or participating in any manner in an investigation, proceeding, or hearing, under the ADA, including, without limitation, her actions that preceded *Beckerich II*.

64. Defendants SEP, St. E, Prichard, and Colvin, violated 42 U.S.C. § 12203(b), when they collectively coerced, intimidated, threatened, or interfered with Plaintiff aiding or encouraging other individuals in the exercise or enjoyment of any right granted or protected by the ADA, including, without limitation, by her actions that preceded *Beckerrich II,* when they, subsequent to that, carried out their threats by taking adverse action, viz. the termination of the Plaintiff on or about October 4, 2021.

65. Plaintiff has been proximately and actually harmed by the foregoing violations.  She has suffered and continues to suffer, among other damages, lost wages and benefits in an amount exceeding $300,000 to the present, plus ongoing additional damages such as emotional distress to be proven at trial, and such other damages as we may establish at trial.

11

66. Pursuant to 42 U.S.C. 2000e-5 (including as it has been incorporated for ADA claims under 42 U.S.C. § 12203(c) and 42 U.S. Code § 12117(a)), as well as 42 U.S.C. § 1981a, Plaintiff brings the foregoing claims, and seeks: (i) compensatory damages which have been proximately caused by these intentional violations, to include amounts for back pay, front pay, lost benefits and emotional distress, all of which were actually and proximately caused by the foregoing violations; (ii) because the foregoing violations were made with malice or with reckless indifference to the federally protected rights of Plaintiff, punitive damages as authorized by 42 U.S.C. § 1981a.

67. Plaintiff likewise seeks permanent injunctive relief under 42 U.S.C. 2000e-5(g), to enjoin further violations.

68. Plaintiff likewise seeks her reasonable attorney and expert fees and costs under 42 U.S.C. 2000e-5(k).

**COUNT II – KRS Chapter 344 Retaliation and Conspiracy (Defendants Prichard, SEP, Colvin, and St. E)**

69. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

70. KRS 344.280 makes it illegal for either one "person" or for "two or more persons to conspire" to "retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter."

71. Defendants Prichard, SEP, Colvin, and St. E, each individually, and collectively conspired to retaliate, and then retaliated, against the Plaintiff for: (i) her opposition to a practice made unlawful under KRS Chapter 344; and (ii) assisting or participating in any investigation, proceeding, or hearing under KRS Chapter 344, including, without limitation, her actions that

12

preceded *Beckerich II,* as well as the submission of her request for a religious accommodation to the Vaccine Mandate.

72. While Defendants Colvin and St. E did not employ the Plaintiff, they are each, along with Defendants Prichard and SEP, liable under a civil conspiracy theory, in that they engaged in a corrupt or unlawful combination or agreement between them, by concert of action, to perform an unlawful act.

73. As a result of the foregoing retaliation and conspiracy, adverse action was taken against the Plaintiff, viz. the termination, of the Plaintiff on or about October 4, 2021, which has proximately and actually caused her compensatory damages in excess of $300,000, to include amounts for back pay, front pay, lost benefits and emotional distress.

74. Defendants' actions also warrant the imposition of punitive damages, as they were predicated and made with malice, fraud, and/or oppression, in an amount to be determined at trial.

**COUNT III – Title VII Religious Accommodation Claim (as against SEP only)**

75. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

76. Plaintiff had a sincerely held religious belief, contrary to Defendant SEP's Vaccine Mandate, that was substantially burdened by that mandate.

77. Plaintiff sought a reasonable accommodation from the Vaccine Mandate on September 13, 2021.

78. Defendant SEP was able to reasonably accommodate that belief, by exempting Plaintiff from the Vaccine Mandate and, further, such accommodation would not impose an undue burden upon Defendant SEP.

79. Initially, Defendant SEP purported to grant that exemption on September 20, 2021.

80. Defendants Prichard and SEP then terminated the Plaintiff's employment on October 4, 2021, less than three weeks from Plaintiff's request for an accommodation.

81. Title VII, at 42 U.S.C. 2000e-2(a)(1) makes it an unlawful employment practice for an employer "to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion."

82. Further, pursuant to 2000e-2(m), "an unlawful employment practice is established when the complaining party demonstrates that … religion… was a motivating factor for any employment practice, even though other factors also motivated the practice."

83. Title VII, at 42 U.S.C. 2000e, defines religion as including "all aspects of religious observance and practice, as well as belief."

84. Defendant SEP discharged Plaintiff because of her religion, or, at the very least, her religion and religious beliefs were a motivating factor in such discharge.

85. Plaintiff has been proximately and actually harmed by the foregoing violations, and has suffered lost wages and benefits as a result, in an amount exceeding $300,000 to the present, plus additional damages such as emotional distress to be proven at trial, and such other damages as we may establish at trial.

86. Pursuant to 42 U.S.C. 2000e-5 (including as it has been incorporated for ADA claims under 42 U.S.C. § 12203(c) and 42 U.S. Code § 12117(a)), as well as 42 U.S.C. § 1981a, Plaintiff brings the foregoing claims, and seeks: (i) compensatory damages which have been proximately caused by these intentional violations, to include amounts for back pay, front pay, lost benefits and emotional distress, all of which were actually and proximately caused by the foregoing violations; (ii) because the foregoing violations were made with malice or

with reckless indifference to the federally protected rights of Plaintiff, punitive damages as authorized by 42 U.S.C. § 1981a.

**COUNT IV – Discharge Against Public Policy (Defendants Prichard, SEP, Colvin, St. E)**

87. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

88. Pursuant to Ky. Const. § 116, the Kentucky Supreme Court has plenary power to establish rules, including rules of evidence.

89. Kentucky Rule of Evidence 503 provides for a privilege. It provides: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client: (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer."

90. Defendants Prichard, SEP, Colvin, and St. E, acting in concert, threatened the Plaintiff if she did not waive the privilege with respect to her communications with the Deters Firm and turn over privileged communications, and then these Defendants carried out those threats by terminating her employment on October 4, 2021.

91. The foregoing actions were contrary to Kentucky public policy, given that "maintaining and protecting the integrity of the attorney-client relationship is an important public policy of this Commonwealth." *Keysor v. Commonwealth*, 486 S.W.3d 273, 280 (Ky. 2016). Further, the Kentucky Supreme Court "promulgates and enforces Rules of Professional Conduct, SCR 3.130 et seq., to support and protect attorney-client relationships." *Id.* And, KRE 503, is a rule "adopted by this Court with the express endorsement of the General Assembly." *Id.* at 281.

92. Pursuant to *Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985), and its progeny, Plaintiff's discharge was in contravention of public policy, in that it was predicated on Plaintiff's failure or refusal to violate the law (i.e. the attorney-client privilege), and, as further grounds, the discharge was due to "the employee's exercise of a right conferred by well-established legislative enactment."

93. While Defendants Colvin and St. E did not employ the Plaintiff, they are each, along with Defendants Prichard and SEP, liable under a civil conspiracy theory, in that they engaged in a corrupt or unlawful combination or agreement between them, by concert of action, to perform an unlawful act.

94. Plaintiff has been proximately and actually harmed by this violation, including lost wages and benefits, in an amount exceeding $300,000, emotional distress to be proven at trial, and such other damages as we may establish at trial. Defendants are liable for these amounts.

95. Defendants' actions also warrant the imposition of punitive damages, as they were predicated and made with malice, fraud, and/or oppression, in an amount to be determined at trial.

## COUNT V – Declaratory Relief as to Enforceability and Applicability of Non-Compete Provision (as to SEP)

96. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

97. Because Plaintiff's termination was not actually for grounds authorized under the Agreement, or at least, if authorized by the Agreement, the Agreement has to give way to state or federal law, the termination was not, and could not be, a for-cause termination, but was instead a not-for-cause termination.

98. Plaintiff seeks a declaration that her termination, under these circumstances, was not for cause under Paragraph 10 of the Agreement, and thus the non-compete provision is not applicable to her.

99. In the alternative, because the termination, as set forth herein, was in contravention of federal and state law, any restriction on her ability to compete cannot be enforced against her.

100.    Plaintiff seeks a declaration that the non-compete provisions in Paragraph 11 of the Agreement either are not applicable, or unlawful as applied to her and these facts.

WHEREFORE, Plaintiff prays for relief as follows:

- That Defendants be held liable for compensatory damages, in an amount to be proven at trial;

- That Defendants be held liable for punitive damages, in an amount to be proven at trial;

- That declaratory relief as to the non-compete provisions in Paragraph 11 of the Agreement be entered in her favor, and that such provisions are not applicable or are unlawful as applied to her;

- That injunctive and/or other appropriate equitable relief be granted;

- That she be awarded her reasonable attorney fees, expert fees, and costs for this matter; and,

- That she be awarded any other relief that this Court find just and proper.

## JURY DEMAND

Plaintiff demands trial by jury for all claims and causes so triable under FRCP 38.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (v)
859/495-0803 (f)
chris@cwiestlaw.com

/s/ Thomas B. Bruns_____
Thomas B. Bruns (KBA 84985)
Bruns, Connell, Vollmer, Armstrong
4555 Lake Forrest Dr., Ste. 330

Cincinnati, OH 45242
513-312-9890(v)
***Counsel for Plaintiffs***

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Amy DiChiara, M.D. declare under penalty of perjury that I have read the foregoing Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 8/29/2022.

*[signature]* MD
Amy DiChiara, M.D.