EMPLOYMENT AGREEMENT

BETWEEN

ST. ELIZABETH PHYSICIANS

AND

AMY J. DıCHIARA, M.D.

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into and effective as of January 1, 2013 (the "Effective Date") by and between AMY J. DICHIARA, M.D. ("Physician"), whose mailing address is 5289 Birchknoll Court, Cincinnati, Ohio 45230, and ST. ELIZABETH PHYSICIANS ("SEP"), a not for profit corporation organized under the laws of the Commonwealth of Kentucky, whose principal place of business is located at 334 Thomas More Parkway, Suite #160, Crestview Hills, KY 41017.

RECITALS:

A.     SEP was formed in order to promote the health and well-being of the Northern Kentucky and surrounding community by providing quality, cost-efficient physician services to patients; and

B.     Physician is or will be prior to the start of the Initial Term of this Agreement a duly licensed physician in the State(s) of Kentucky or other service areas as designated and desires to provide services to SEP in such capacity and in accordance with the terms and conditions set forth herein; and

C.     SEP desires to assure itself of the services of Physician in such capacity and in accordance with the terms and conditions set forth herein.

AGREEMENT:

THEREFORE, the parties agree as follows:

1.     EMPLOYMENT.   SEP hereby employs Physician to provide physician services and Physician hereby accepts such employment by SEP on the terms and conditions set forth herein.

2.     TERM OF AGREEMENT.   The term of this Agreement shall be for the term set forth in Exhibit A, attached hereto (the "Initial Term"), unless otherwise terminated as provided herein.

3.     PRACTICE LOCATION.   Physician's primary place of practice shall be at the office location(s) or hospital location(s) specified in Exhibit A ("Office").

4.     RESPONSIBILITIES OF PHYSICIAN.

4.1     *General Duties.*   Physician shall fulfill the responsibilities contained in this Agreement as well as those set forth in Exhibit A.  Physician is hereby engaged as an employed physician and shall devote all of his/her entire professional and vocational time, attention and best efforts to render professional patient care services or other duties under this Agreement.  However, nothing in this Agreement shall be construed to prevent Physician from investing in, or owning, a non-competing business, as long as Physician's involvement in such business activity is passive and such investment or ownership interest does not violate SEP's Conflict of Interest Policy.

**4.2**    *Medical Staff Membership.*  Physician shall only maintain membership on the Medical Staff of Saint Elizabeth Medical Center, Inc. ("St. Elizabeth Healthcare") with all of the qualifications, prerogatives and responsibilities of Medical Staff membership, including attendance at conferences and service meetings in compliance with the constitution, by-laws, policies, procedures, rules and regulations.  Physician shall only admit patients to St. Elizabeth Healthcare ("SEH") except in cases in which Physician determines it: (i) would not be in the patient's best medical interest; (ii) would violate third-party payor restrictions; or (iii) would be contrary to patient preference.  The only exceptions are that physician may maintain medical staff membership to and admit to hospitals, nursing homes and rehabilitation facilities as outlined in Exhibit D.  Prior written approval of SEP is required on an annual basis for any amendment to Exhibit D.

**4.3**    *Conflict of Interest.*    Except as otherwise expressly provided in this Agreement, Physician shall not directly or indirectly render services of a professional nature to or for any person or firm for compensation, including, but not limited to, board memberships and medical directorships, without the express written consent of SEP.  All outside professional services must be reviewed and approved in writing yearly by the administration of SEP.  However, nothing contained herein shall prohibit Physician from performing medical staff, committee or teaching appointments associated with SEP or SEH, or from maintaining membership or participating in private, social, civic or professional associations or from engaging in passive business activities. Physician shall be obligated to annually review the Conflict of Interest Policy and sign the Disclosure Statement.  Physician presently holds the positions/outside activities identified on Exhibit D, attached hereto, which is hereby approved by SEP for the first Employment Year.  So long as such outside activities contained in Exhibit D do not violate the Conflict of Interest Policy, Physician may continue to maintain such outside activities.

**4.4**    *Representations and Warranties.*    At all times while this Agreement is in effect, Physician makes the following representations and warranties to SEP:

(a)    Physician has never been: (i) convicted of health care fraud; (ii) convicted of a health care related crime; (iii) suspended, sanctioned, restricted, or excluded from participating in any private, federal, or state health insurance program; (iv) convicted of theft or embezzlement relating to a health care program; (v) convicted of making a false statement relating to a health care entity; (vi) convicted of obstructing a criminal health care investigation; (vii) convicted of laundering money that came from the commission of a federal health care offense; or (viii) known by another name or changed his/her name legally.

(b)    Physician has not committed any act for which Physician may be permissibly excluded from participation in any federal or state health care program, including Medicare and Medicaid;

(c)    Physician has no direct or indirect ownership or controlling interest of 5% or more of a "sanctioned entity" that has been convicted of any offense under 42 C.F.R. 1001.101 through 1001.104 or that has been terminated or excluded from participation in Medicare or a Medicaid program nor has Physician been an officer or managing employee of such an entity;

3

(d)     Physician is not subject to or bound by any non-competition or other restrictive covenant that would be violated or contravened by Physician's execution of this Agreement or that would impede or interfere with the performance of Physician's duties hereunder; and

(e)     Physician shall notify SEP within fourteen (14) calendar days of learning that any of the foregoing statements no longer remain true or accurate during the Term of this Agreement.

**4.5**    *Confidentiality Agreement*.    Physician agrees to keep absolutely confidential, both during and after the employment with SEP, all Confidential Information of SEP which includes, but is not limited to, the following:

(a)     All patient names and records, including office charts, hospital charts, films, correspondence about a patient, billing records, insurance records, and reports, for all patients of SEP;

(b)     All documents showing names of patients treated during Physician's employment with SEP, including all computer printout, billing records, insurance records, accounts receivable records, patient appointment calendars, treatment schedules or lists, and any other document disclosing the names of patients seen or treated by Physician during employment;

(c)     All price lists, fee schedules, reports or any other document disclosing the fees charged by SEP for treatment or related service;

(d)     All or any portion or phase of any financial information, business plans, medical services, accounting data, or other financial or business information which has not been published or disseminated outside of SEP or which has not otherwise become a matter of general public knowledge; and

(e)     The whole or any portion or phase of any employee payroll, fringe benefit, salary, bonus, commission or other form of compensation information relating to performance evaluations, discipline, employee conduct, complaints, and other matters relating to his/her or any other person's employment with SEP including the terms of this Agreement. Notwithstanding the foregoing, Physician may disclose the terms of this Agreement to professionals providing services to Physician including, but not limited to, legal counsel, accountants, and tax preparers. However, Physician shall inform such professionals of these confidentiality restrictions and require such professionals to abide by these same terms.

**5.     SEP OBLIGATIONS.**    SEP shall provide such space, staff, equipment, and supplies as it deems reasonably necessary for Physician's practice. SEP shall retain authority and control over the support staff, equipment, and supplies. These items shall be used only for services performed as an employee for SEP. SEP, with consultation from Physician, shall market and advertise the services provided by Physician and SEP.

**6.     COMPENSATION.**    Physician's total compensation shall be calculated and paid according to the Compensation System set forth in Exhibit B and Exhibit E ("Compensation"). The Compensation System may be changed on a prospective basis from time to time by SEP

provided, however, that any guaranteed base salary or retention bonus set forth in Exhibit E may not be amended without Physician's written consent. SEP's Board of Directors may review and recommend modifications to the Compensation System to the SEH Board of Trustees for final approval. SEP will give Physician at least six (6) months advance written notice prior to the implementation of any modification to the Compensation System. If Physician does not agree to such modifications, Physician may terminate the Agreement as provided herein. Notwithstanding the foregoing, in the event this Agreement is terminated at any time, with or without cause, Physician shall be entitled to only unpaid Compensation for work performed up to the effective date of termination. This restriction shall apply regardless of the compensation model under which Physician is being compensated at the date of termination including, but not limited to, an annual guarantee. For example, if this Agreement is terminated after thirty-two (32) weeks of the term and Physician has been previously compensated for thirty (30) weeks at his/her annual guaranteed salary, Physician shall be entitled to only two (2) weeks compensation.

7.     CHARGES FOR SERVICES.  SEP retains the sole and exclusive right to enter into contracts for the provision of physician services. Physician is not authorized and has no authority as an officer, agent or representative of SEP to enter into any contract for the provision of physician services unless expressly authorized in writing by SEP. Any such unauthorized contract entered into by Physician shall be null and void and Physician agrees to indemnify SEP for any costs and damages incurred by SEP as a result of Physician entering into an unauthorized contract. Fees for physician services provided by Physician under this Agreement shall be billed by SEP. Physician authorizes SEP to receive payment for all physician services provided by Physician under this Agreement. Any wages, fees or stipends paid or payable to Physician from any source other than from SEP for services rendered under this Agreement shall be endorsed and paid over by Physician to SEP. The fee structure for physician services performed by Physician shall be determined by SEP. SEP shall be considered the agent of Physician in the billing and collection of fees for Physician's services provided hereunder. SEP shall bill and collect all Medicare and Medicaid charges in the name of Physician, and Physician authorizes SEP to accept such payments. All fees collected by SEP for the services of Physician under this Agreement shall be the property of SEP. In no event shall Physician bill or collect any charges from patient services provided under this Agreement.

SEP shall accurately and timely bill and collect for all services rendered by Physician in a commercially reasonable manner, and in compliance with all applicable laws, regulations and rules of third party payors, including, but not limited to, Medicare and Medicaid. SEP shall periodically, at least monthly, provide Physician a detailed report describing charges, amounts billed and amounts collected for services rendered by Physician.

8.     PROFESSIONAL LIABILITY INSURANCE COVERAGE.  SEP shall provide and maintain professional liability insurance coverage for claims arising out of any acts or omissions of Physician in the course of and within the scope of his/her duties and responsibilities under this Agreement with limits of not less than One Million Dollars ($1,000,000) per incident and Three Million Dollars ($3,000,000) annual aggregate, or such other amounts as shall be required by applicable statutes. SEP shall provide such coverage in a manner determined by SEP in its sole discretion including, but not limited to, a self-insurance program, risk retention group, captive insurance company, or commercial insurance carrier. The limits of insurance are subject to

change at the discretion of SEP. Such coverage shall be subject to all terms, conditions and exclusions set forth in the applicable plan or program of insurance.

**8.1    *Duty in the Event of a Claim or Incident.***

(a)    If a claim is made or suit is brought against Physician, Physician shall immediately forward to SEP every demand, notice, summons or other process received by Physician or Physician's representatives regarding such claim. Physician shall cooperate with SEP, its insurance carrier or as otherwise directed by SEP, both during and following the Term of this Agreement, in the defense of any such claim and in enforcing any right of contribution or indemnity against any third person or organization who is or may be liable for all or any part of the damages sought from Physician or SEP. Physician shall not, except with SEP's prior approval, voluntarily offer or make any payment, assume any obligation, or incur any expense relating to claims covered under the professional liability insurance coverage described herein. In the event a claim arises from an act or omission by Physician, Physician shall, upon SEP's request or the request of its representative, attend hearings or trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The SEP Board shall have the right after consultation with the Physician to settle claims on behalf of Physician without Physician's consent to such settlement.

(b)    If Physician becomes aware of a possible injury, potential claim, loss or damage to which the professional liability coverage provided hereunder may apply, Physician shall give notice to SEP of all facts known or reasonably obtainable by Physician regarding the injury, potential claim, loss or damage, including but not limited to, the name of the person who suffered the injury, loss or damage, as well as the date, time, place and circumstances thereof. Such notice shall be given as soon as practicable.

(c)    In the event of any payment by SEP under this Agreement, SEP shall be subrogated to all of Physician's rights of recovery against any third person or organization and Physician shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights for SEP. Physician shall do nothing after loss to prejudice such rights.

**8.2    *Exclusions from Coverage.*** Specifically excluded from the coverage provided hereunder is coverage for any claim arising out of medical services provided by Physician that are not within the course and scope of his/her responsibilities under this Agreement; coverage for bodily injury to Physician arising out of and in the course of employment by SEP; coverage of any obligation for which SEP or any insurance carrier as its insurer may be liable under Workers' Compensation, unemployment compensation, disability benefits law or under any similar law; or under any automobile liability or fire insurance policy; coverage of any obligation for which SEP or any insurance carrier as its insurer may be held liable for general liability claims except as such claims may be otherwise covered under the professional liability self-insurance program; coverage of any claim against Physician arising out of any dishonest, fraudulent, bad faith, criminal or sexual act by Physician; and coverage of any claim against Physician arising out of injury intentionally inflicted by Physician.

**8.3** *Extended Reporting Endorsement.* If SEP provides the primary professional liability insurance coverage for Physician on a "claims made" basis, SEP shall provide an extended reporting endorsement ("tail coverage") upon the termination of this Agreement at Physician's expense. Notwithstanding the foregoing, if SEP terminates this Agreement without cause, Physician terminates this Agreement for cause pursuant to Section 10.3, 10.4 or retirement, or this Agreement is terminated pursuant to Section 12, SEP shall pay 100% of the tail coverage premium. Otherwise, the cost of such tail coverage to Physician shall be prorated according to the number of years Physician is employed by SEP. Specifically, Physician shall pay: (a) 100% of the premium if Physician leaves SEP before one (1) year of employment; (b) 80% if Physician leaves SEP after the first year of employment but before the end of the second year; (c) 60% of the premium if Physician leaves after the second year of employment but before the end of the third year; (d) 40% if Physician leaves after the third year of employment but before the end of the fourth year; (e) 20% if Physician leaves after the fourth year of employment but before the end of the fifth year. SEP shall pay 100% of the premium if Physician is employed by SEP greater than five (5) consecutive years. Physician shall pay 100% of premium for tail coverage if Physician fails to provide termination notice required under this Agreement.

**9.** ACCESS TO BOOKS AND RECORDS. In accordance with the Social Security Act Section 1861(v)(1)(I) [42U.S.C. §1395(x)(v)(1)(I)], 42 C.F.R. §§ 420.300-420.304, and Kentucky Medical Assistance Program (KMAP) policies and guidelines, Physician agrees that until the expiration of four (4) years after the furnishing of the services provided under this Agreement, the Secretary of the U.S. Department of Health and Human Services (HHS), the U.S. Comptroller General, the Kentucky Cabinet for Human Resources (CHR), and their duly authorized representatives, shall have access to Physician's copy of this Agreement, together with such books, documents and records of Physician as are necessary to certify the nature and extent of the costs of those services. If Physician carries out the duties of this Agreement through a subcontract worth Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, the subcontract will also contain a clause to permit access by the Secretary of HHS, the Comptroller General, CHR and their representatives to the subcontractor's books and records. This access is conditioned upon the applicability of Social Security Act §1861(v)(1)(I), 42 C.F.R. §§420.300-420.304, and K.M.A.P. policies to this Agreement.

**10.** TERMINATION OF AGREEMENT.

**10.1** *Termination Without Cause.* Subject to the terms of this Agreement, either party may terminate this Agreement without cause and without liability for further payment to the other party at any time by giving not less than ninety (90) days prior written notice to the other party provided that the termination date specified in such notice is at least one (1) year after the Effective Date of this Agreement. At SEP's sole discretion, SEP may pay Physician at his/her then current monthly draw for the ninety (90) day period in lieu of requiring Physician to work the remainder of such time.

**10.2** *SEP's Right of Termination For Cause.* SEP shall have the right to terminate this Agreement immediately upon written notice, except as otherwise provided below, if such termination is for cause. For purposes of this subsection, "cause" shall be any of the following:

(a)     A breach of Section 4, Exhibit A, or a breach of any material term of this Agreement by Physician if such breach is not cured within thirty (30) days after written notice from SEP.  If within two (2) years following such written notice and the subsequent cure by Physician, a subsequent violation of the same provision is committed by Physician that is the same or similar to the prior breach, then SEP may terminate this Agreement immediately upon written notice with no obligation to provide Physician with a right to cure;

(b)     Loss, suspension, denial or revocation of Physician's license to practice medicine in Kentucky or other designated service areas or Physician's DEA license in which case termination is automatic without further action by SEP upon the effective date of the loss, suspension, denial or revocation of Physician's license to practice medicine or Physician's DEA license;

(c)     Reduction, suspension or termination of Physician's clinical privileges or other adverse or corrective action imposed on Physician by SEH or their Medical Staff or any hospital where Physician has privileges;

(d)     Resignation of Physician from SEH's Medical Staff without written approval by SEP;

(e)     Conviction, plea of guilty, nolo contendere or no contest of Physician for any misdemeanor, felony, or DUI;

(f)     Physician's repeated neglect of duties under this Agreement after written notice from SEP or a material violation of SEP's or the Medical Staff's policies or rules and regulations of any hospital where Physician has privileges;

(g)     Adoption or promulgation of any statutory or regulatory provision that would restrict or adversely affect Physician's ability to utilize SEH's services or products for SEP's patients;

(h)     Misappropriating any funds or property of SEP with the exception of incidental medical supplies;

(i)     A positive drug test or having illegal drugs in Physician's system or a positive alcohol test or having alcohol in Physician's system while on duty including call;

(j)     SEP is no longer able to provide professional liability insurance to Physician at a cost commensurate with other physicians in the same specialty;

(k)     Physician is suspended or terminated from participation in any government payor or plan;

(l)     Physician fails to satisfy the board certification requirements outlined in Exhibit A;

8

(m)     Upon investigation by SEP, Physician is deemed by SEP to be disruptive pursuant to the Medical Staff Code of Conduct Policy of SEP or SEH, or as otherwise solely determined by SEP, Physician violates SEP or SEH policies or procedures;

(n)     Physician engages in conduct that is disruptive, unprofessional, unethical, fraudulent, inconsistent with SEP's core values, or constitutes a threat to the health, safety or welfare of any person;

(o)     Physician fails to positively respond to or comply with, as solely determined by SEP, a performance improvement plan established by SEP to improve Physician's performance;

(p)     Any other conduct, disruptive behavior, insubordinate behavior or activity by Physician that SEP determines in good faith jeopardizes the proper operation or reputation of SEP if such conduct or activity continues to occur after written notice from SEP; and

(q)     SEP determines in good faith that Physician has breached a fiduciary obligation or duty of loyalty or failed to act in a manner consistent with SEP's values, mission or Code of Conduct.

In lieu of or in addition to such termination, SEP at its sole discretion may take corrective action (e.g., suspension) against Physician as it deems appropriate.  For purposes of (b), (c) and (e) above, this Agreement shall not be terminated until any and all administrative or judicial appeals have been exhausted or a final determination that is no longer appealable has been made.

**10.3    *Physician's Right to Terminate For Cause*.**  Physician shall have the right to terminate this Agreement immediately upon written notice to SEP, if such termination is for cause.  For purposes of this subsection, "cause" shall be any of the following:

(a)     A breach of any material term of this Agreement by SEP if such breach is not cured following the Dispute Resolution Provision in Section 14 of this Agreement;

(b)     Any other conditions or circumstances, which SEP agrees by a vote of two-thirds of the members of its Board of Directors, constitute cause.  Physician shall have the right to request termination for cause but such request must be in writing;

(c)     The sale, transfer or assignment of all or substantially all of the assets or medical practice of SEP to any entity which is not a parent, subsidiary or member of SEP or which is not owned, sponsored or controlled by or otherwise affiliated with SEH;

(d)     The commencement by SEP of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of SEP in a case under any such law, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of SEP or for any substantial part of SEP's property, or ordering the wind-up or liquidation of SEP's affairs; or the filing and pendency for sixty (60) days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by SEP of any general assignment

9

for the benefit of creditor's or the failure of SEP generally to pay SEP's debts as such debts become due; or the taking of action by SEP in furtherance of any of the foregoing; or

(e)    Adoption or promulgation of any statutory or regulatory provision that would restrict or adversely affect Physician's ability to utilize St. Elizabeth Healthcare's services or products for SEP's patients.

**10.4    *Automatic Termination.*** The parties agree that this Agreement shall automatically terminate upon the occurrence of any of the following:

(a)    Death of Physician; and

(b)    Any inability of Physician to perform the essential job functions despite reasonable accommodations pursuant to the Americans with Disabilities Act that lasts longer than ninety (90) days.

**10.5    *Physician's Obligations Upon Termination.***

(a)    In the event of termination of this Agreement (regardless of the reason therefore, including expiration of the term hereof), in addition to the obligations of Physician as described herein, Physician agrees as follows:

i.    Physician shall return to SEP any and all prescription pads, office keys, computer equipment, iPads, cellular phones, pagers, medical instruments, any other SEP equipment and/or records that may be in Physician's possession or control.   Except as specifically provided elsewhere herein, Physician shall have no claim to, or right to access, SEP's books, records, accounts, patient charts or medical records, EMR, or any other SEP assets except as stated herein.  Physician shall also have no claim to SEP equipment or supplies.

ii.    SEP shall make reasonable arrangements to give Physician access to SEP's records for purposes of Physician's response to a formal investigation, audit, or peer review matter, or for purposes of defending a claim (whether filed or threatened to be filed) of professional malpractice or misconduct.  Physician agrees to cooperate with and assist SEP with regard to any investigation, Medicare, Medicaid or insurance audit, or peer review matter, defense of liability action concerning Physician which occurs in whole or in part after the termination of this Agreement.

iii.    Physician authorizes SEP or its designated agents to open any mail received by SEP that may be addressed to Physician in order to determine whether any such mail contains materials or information that is relevant to, or the property of, SEP which items shall be retained by SEP without notice thereof to Physician.  Any such mail that is personal to Physician shall be given or forwarded to him/her as soon as reasonably possible; however, the forwarding of such personal mail shall be done for a reasonable period not to exceed six (6) months after the date of termination, subsequent to which any such mail shall not be accepted or shall be returned to the U.S. Postal Service or the applicable courier.  Physician agrees that any mail he/she

10

receives at any other address that pertains to services provided to SEP patients or any payments for such services shall be given or forwarded to SEP as soon as reasonably possible.

        iv.     Physician shall complete all medical records and documentation necessary for billing and care of patients. Physician will not be paid any sums due and owing under this Agreement until medical and billing records are properly completed by Physician. If Physician has not completed the records within thirty (30) days of termination date, SEP may issue a report to NPDB and Kentucky Board of Medical Licensure.

**10.6**   ***SEP's Obligations Upon Termination***  Upon termination of this Agreement, SEP shall send a notice to patients treated by Physician during the two (2) year period preceding the termination date informing them of Physician's departure from SEP and the office location and telephone number of Physician's new practice. Such notice shall be sent at SEP's expense and will be mailed no later than sixty (60) days after the termination date. If, after termination of this Agreement for any reason, a patient shall request in writing that the patient's records be provided to Physician, and the request and Physician's provision of services to the patient would not otherwise violate the terms of this Agreement, then SEP shall retain the patient's original medical record and transfer a copy of such medical records to Physician at the Physician's expense.

**11.**     COVENANT NOT TO COMPETE AND COVENANT NOT TO SOLICIT.

**11.1**   ***Non-Compete.***  Except as provided in Section 11.1 (a) below, for a period of one year following the date of termination ("Restricted Period") of employment for any reason, Physician shall not practice medicine in any manner including as an employee, independent contractor, or medical director in any setting, including but not limited to, a physician office, a physician group practice, an insurance company or a hospital within 20 miles, measured by air miles, of the SEP office or SEH facility in which the physician practiced over the previous one (1) year ("Protected Area").

     (a)    Notwithstanding the foregoing, this Section 11.1 shall not apply if (i) SEP terminates this Agreement without cause or pursuant to Section 10.2(g); (ii) Physician terminates this Agreement for cause pursuant to Section 10.3; (iii) this Agreement is terminated pursuant to Section 12; or (iv) this Agreement is terminated pursuant to Section 10.4.

**11.2**   ***Non-Solicitation of Patient/Employees.***  Physician agrees that he/she will not directly or indirectly solicit SEP's patients and/or employees during the Restricted Period.

     Further, during any term of this agreement and for one (1) year thereafter Physician shall not, directly or indirectly, solicit any patient who is receiving services from SEP or who has received services from Physician, SEP, or SEH during this Agreement. Also, during the Restricted Period Physician shall not, directly or indirectly, solicit any SEP employee. Notwithstanding the foregoing, Physician is permitted to place advertisements in newspapers, television, and radio to advertise Physician's practice and the fact Physician is accepting patients as long as Physician's new practice location does not violate Section 11.1.

**11.3**  *Private Practice Exception.*  Notwithstanding any other term of this Agreement to the contrary, if Physician's employment is terminated by Physician without cause, or in the event of expiration of this Agreement, then it shall not be a violation of the Agreement for Physician to engage in the Private Practice of Medicine within the Protected Area provided Physician: (a) in the case of a termination of the Agreement by Physician, has completed two (2) years of employment with SEP; (b) notifies SEP in writing, giving at least ninety (90) days prior written notice; and, (c) provides SEP with copies of existing legal documents showing the legal form of ownership and make-up of the private practice.  The term "Private Practice of Medicine" shall mean that Physician is either in a solo practice or in a wholly-owned physician group that has not more than six (6) physicians and has no ownership interest by a hospital, health system, insurance plan or other entity competitive to SEP or SEH, regardless of location, so long as Physician remains in such solo practice or in a wholly-owned physician group that has not more than six (6) physicians for at least two (2) years after the termination of this Agreement.  SEP shall cooperate with Physician in the transition to the Private Practice of Medicine; including sharing credentialing information and creating a patient notification letter and mailing such letter to Physician's active patients.  By mutual agreement, Physician may purchase a copy of the charts for active patients who wish to transfer to Physician's private practice.  An "active patient" is a patient to whom Physician has provided physician services within the twenty-four (24) months prior to the termination date.  Under this Private Practice exception, Physician shall be provided the opportunity to employ any SEP employee working at Physician's Practice Site at the termination of this Agreement, provided that the employee initiates their move to Physician's private practice.  Physician shall not solicit or recruit any existing SEP employees.

**11.4**  *Scope of Covenant Not to Compete.*  Physician acknowledges that the restrictions contained in this Section 11 are reasonable and necessary to protect SEP's business.  It is the intention of the parties to restrict the activities of Physician only to the extent necessary for the protection of the legitimate business interests of SEP and the parties specifically covenant and agree that should any of the provisions set forth in this Agreement, under any circumstances, be deemed by a court of competent jurisdiction to be too broad for that purpose, then such provisions will nevertheless be valid and enforceable to the extent necessary for such protection and permitted by such court.  Physician agrees that the enforcement of the restrictive covenants in this Agreement shall not prevent Physician from earning a livelihood.

**11.5**  *Relief Upon Breach of Covenant Not to Compete.*  Due to the difficulty of establishing monetary damages, the parties agree that, to the fullest extent permitted by law, upon application therefore, SEP shall be entitled to an injunction restraining Physician from the violation of this Agreement, without prejudice to any other legal remedies available to SEP as a result of such violation.  If Physician is found to be in violation of this Agreement, then Physician agrees to (i) cease any and all activities deemed to be in violation of this Agreement, and (ii) to indemnify SEP against any and all damages, costs and expenses, including reasonable attorneys fees, incurred by SEP in enforcing, prosecuting or compromising any action or claim arising by reason of any violation of this Agreement by Physician.  The restrictions contained in this Section and this indemnity shall survive the termination of this Agreement.  If SEP seeks to enforce one or all of these Covenants through preliminary injunctive relief or temporary restraining order, Physician waives any requirement that SEP post any bond or security.  The period of the Covenants described herein shall be extended by any time during which Physician is in breach of

these covenants. The existence of any claim or cause of action Physician may have against SEP, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by SEP of the Covenants. In addition to any injunctive relief, specific performance, and/or other damages SEP may recover, Physician and SEP agree that if Physician breaches the Non-Compete Covenant, Physician shall have to pay a lump sum amount equal to Physician's gross compensation for the twelve (12) months immediately preceding the termination of the Agreement or Two Hundred Thousand Dollars ($200,000.00), whichever amount is greater, as liquidated damages.

**12.    TERMINATION OR MODIFICATION DUE TO INCONSISTENCY WITH APPLICABLE LAW.** The parties recognize that this Agreement at all times is subject to applicable local, state and federal law, including but not limited to, the Social Security Act, the rules, regulations and policies of the Department of Health and Human Services, all public health and safety provisions of state law and regulations, and rules and regulations of the state Certificate of Need Agency. The parties further recognize that the Agreement shall be subject to amendments in such laws and regulations and to new legislation such as a new federal or state economic stabilization program or health insurance program. Any provisions of law that invalidate, or otherwise are inconsistent with the terms of this Agreement or that would cause one or both of the parties to be in violation of any law, shall be deemed to have superseded the terms of this Agreement, provided that the parties shall exercise their best efforts to accommodate the terms and intent of this Agreement to the greatest extent possible consistent with the requirements of law and negotiate an amendment to this Agreement to achieve such an accommodation. In the event that within a period of sixty (60) days following the date notice is first given by either party to negotiate an amendment to this Agreement due to a change in law or an interpretation of an existing law, the parties are unable to agree on an amendment to this Agreement following good faith negotiations, either party may terminate this Agreement on at least sixty (60) days written notice to the other party.

**13.    LIMITATION OF CLAIMS.** Physician agrees that any action or suit against SEP or any subsidiaries arising out of any employment or termination of employment including, but not limited to, claims arising under the State or Federal civil rights statutes or breach of contract, must be brought within one (1) year of the event giving rise to the claim or be forever barred. Physician waives any statute of limitations to the contrary.

**14.    DISPUTE RESOLUTION.** Except for a dispute about SEP's decision to terminate this Agreement or disputes related to any of the Covenants in Section 11, any dispute arising out of this Agreement or its implementation shall attempt to be resolved using the following process: (a) Within five (5) business days of the question or dispute either party may request a meeting. Failure to request a meeting shall constitute a waiver by Physician of this Dispute Resolution paragraph. If a meeting is requested, then Physician shall meet with SEP's President to discuss possible solution(s), if any. Any solution, which is mutually agreed upon, or the decision that the parties have been unable to reach a mutually agreed upon decision, shall be subsequently communicated in writing by SEP; (b) In the event that the process described in (a) does not resolve the question or dispute, within five (5) business days after receipt of the decision described in subparagraph (a), either party may submit a written request for a meeting to SEP's Board of Directors, including a description of the question or dispute. SEP's Board of Directors

shall meet with Physician to discuss possible solution(s), if any. Any solution which is mutually agreed upon, or the decision that Physician and the Board have been unable to reach a mutually agreed upon decision, shall subsequently be communicated in writing by SEP; (c) If after exhaustion of the steps set forth in subparagraphs (a) and (b) above without resolution, then the dispute resolution process will be considered ended as it pertains to that dispute, and either party may pursue arbitration.

**15.    ARBITRATION.** Any controversy, except the enforceability of the Covenant Not to Compete in Section 11.1, between the parties or claim by one party against the other arising out of or relating to this Agreement, or a breach hereof, shall be settled by a mutually agreed upon arbitrator(s). SEP may pursue enforcement of the covenants in Section 11 in a court of law. The parties shall be bound by the decision of the arbitrator(s). Judgment upon the award rendered by the arbitrator(s) may be entered in a court in accordance with Section 18.1 of this Agreement and shall be enforceable by Kentucky courts. The arbitrator(s) shall be bound by applicable agreements and Kentucky statutes, regulations and rules of procedure and the arbitrator(s) should permit reasonable discovery, issue subpoenas, decide arbitrability issues, preserve order and privacy in the hearings, rule on evidentiary matters, determine the close of the hearing and the procedures for post-hearing submissions, and issue an award resolving the submitted dispute. The arbitrator(s) shall also have authority to rule on motions to dismiss and motions for summary judgment, pursuant to the standards set forth in the Federal Rules of Civil Procedure and/or applicable Kentucky state law. The arbitrator(s) shall be able to apply substantive law as well as the law that allocates burdens of proof. The arbitration shall take place in Kentucky.

**16.    CONFIDENTIALITY OF PEER REVIEW RECORDS.** Physician acknowledges that SEP is a nonprofit corporation sponsored by, and a subsidiary of, SEH. In order to foster more effective peer review and ultimately improve the quality of care provided by SEP and SEH, Physician hereby specifically consents to the confidential exchange of peer review information about Physician between SEP and SEH by way of their respective peer review or quality committees or departments (hereinafter "peer review entities"). Physician agrees that his/her signed acceptance of this Agreement shall operate as a written consent authorizing both SEH and SEP to exchange confidential peer review information. Physician further agrees that this consent to disclose confidential peer review information shall extend to any and all communications to, the records of, and determinations of, the respective peer review entities of SEH and SEP. In the event additional documentation becomes necessary to effectuate the exchange of confidential peer review information between the peer review entities of SEH and SEP, Physician agrees to promptly provide such documentation without objection. Except as specifically provided herein, the parties agree that this consent shall not otherwise operate as a waiver of the peer review privilege and that confidential peer review information shall only be further disclosed in accordance with Medical Staff Bylaws of SEH, SEP or as permitted by law.

**17.    CHARITABLE PURPOSE.** Physician acknowledges that SEP is a charitable, tax-exempt organization recognized under Section 501(c)(3) of the Internal Revenue Code, and as such has an obligation to act at all times in furtherance of its charitable purposes in order to maintain such tax-exempt status, and that this obligation is applicable to all of SEP's activities. As such, Physician expressly acknowledges his/her agreement with, and acquiescence to, the following:

14

(a)     Physician agrees to make medical services accessible in a manner that does not discriminate on the basis of race, sex, religion, age, national origin, place of residence, health status, need for services, ability to pay or source of payment for services rendered;

(b)     Physician agrees to provide services to individuals who participate in the Medicaid and Medicare programs; and

(c)     Physician expressly acknowledges his/her agreement to provide charity care to patients at no charge as requested by SEP, from time to time, consistent with SEP's Charity Care Policy as adopted by the SEP Board of Directors.

18.    MISCELLANEOUS.

**18.1    Choice of Law and Venue.**   This Agreement shall be governed by and construed according to the laws of Kentucky.  All duties and obligations created hereunder are deemed performable in Kentucky, and Boone County shall be the sole and exclusive venue for any proceeding which arises out of this Agreement.

**18.2    *Assignment and Delegation.***  Physician shall not assign any rights or delegate any duties under this Agreement without the prior written consent of SEP.  Any such assignment or delegation without SEP's written consent shall be void.  Physician agrees that SEP shall have the right to assign its rights and delegate its duties hereunder to any entity that is affiliated with SEP.

**18.3    *Notices.***  Any notice to Physician required or permitted under this Agreement shall be deemed given if made in writing and delivered personally or by certified mail, return receipt requested, to the home address of Physician on file with SEP.  Any notice to SEP required or permitted under this Agreement shall be deemed given if made in writing and delivered personally or by certified mail, return receipt requested, to the office of SEP's Chief Executive Officer.

**18.4    *Waiver.***  If either party waives a breach of any provision of this Agreement by the other party, such waiver shall not operate as a waiver of any subsequent breach of the same or any other provision of this Agreement, nor impair either party's rights with respect to any other breach of this Agreement.

**18.5    *Modification.***  Any matter of agreement herein contained may be altered from time to time by the written consent of both parties hereto without in any way affecting the remainder of this Agreement.  Any such modification shall be affixed hereto and shall become a part hereof.

**18.6    *Warranty.***  Physician represents and warrants to SEP that Physician is not under any obligation to any other party inconsistent with or in conflict with this Agreement or which would prevent, limit or impair in any way Physician's performance of Physician's obligations hereunder.

**18.7    *Calendar-Year Basis.***  Unless otherwise specified, all time-frames in this Agreement shall be governed by the calendar year and all activities, including but not limited to

15

reconciliations, CME reimbursement, time, and payments, shall be pro-rated in order for such activities to be aligned with the calendar year.

**18.8**     *Severability*.   Except as otherwise provided in this Agreement, if for any reason any provision of this Agreement shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable, the validity and enforceability of the remainder of the Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law, and, in its modified form, such provision shall be then enforceable and enforced.

**18.9**     *Counterpart Signatures.*   This Agreement may be executed in multiple counterparts, any one of which need not contain the signature of more than one of the Parties but all of which taken together shall constitute the entire Agreement.

**18.10**     *Exhibits Incorporated.*   All the Exhibits attached hereto are incorporated by reference as if fully set out herein.

**18.11**     *Entire Agreement.*   This Agreement constitutes the entire agreement between the parties and contains all of the agreements between the parties with respect to the subject matter hereof. This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto and with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties have entered into this Agreement effective as of the date first written above.

AMY J. DICHIARA, M.D.

_____         12/26/11
("Physician")                                        (Date)


ST. ELIZABETH PHYSICIANS

_____         12/22/11
GLENN A. LOOMIS, M.D.                          (Date)
President & CEO

16

EXHIBIT A - PHYSICIAN RESPONSIBILITIES

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

1.    **TERM.**  Three (3) years beginning January 1, 2013 and ending December 31, 2015. ("Initial Term").  Thereafter, employment under this Agreement automatically shall be extended for additional one year periods unless terminated, as provided in this Agreement ("Renewal Term").

2.    **PRACTICE LOCATION.**  Physician's primary place of practice shall be at 340 Thomas More Parkway, Suite 160A, Crestview Hills, Kentucky 41017, and/or at such other practice location(s) operated by SEP, as mutually agreed in writing between Physician and SEP ("the Office").

3.    **QUALIFICATIONS.**   Physician shall: (a) obtain and hold a valid and unlimited license to practice medicine in the State(s) of Kentucky, and/or other service areas as required by SEP, without restriction or subject to any disciplinary or corrective action; (b) be accepted as and remain an active member in good standing of SEH's Medical Staff with appropriate privileges granted thereby; (c) obtain and hold a valid and unrestricted federal DEA registration and state registration for the prescription of controlled substances; and (d) be able to be insured by SEP for professional liability insurance at a rate commensurate with other physicians in your specialty. Physician shall notify SEP immediately upon any changes in the above qualifications.

4.    **BOARD CERTIFICATION.**    Physician shall remain board certified in Gastroenterology. If Physician is not board certified, Physician shall be board eligible in Gastroenterology and shall become board certified in accordance with SEP's Board certification policy.

5.    **CME.**  Physician shall attend appropriate seminars and continuing education programs or complete other appropriate CME activities as needed to maintain licensure/board certification and remain up-to-date in Physician's area(s) of medicine and/or surgery.  Physician agrees that scheduling of time away shall be coordinated in advance with practice manager and practice partners/call group and shall be taken only when practice location and call responsibilities are covered by appropriate provider(s).

6.    **PROFESSIONAL MEDICAL SERVICES.**  Physician shall provide services on a part-time basis, providing 20 patient contact hours per week within a daily schedule as mutually agreed between Physician and SEP.  Physician will participate in her office's call schedule on a pro-rata basis, based on her 0.5 FTE status.

17

Effective: January 1, 2013
Physician:
SEP

"Full-time" basis shall mean: For all physicians with guaranteed incomes, the physician shall be scheduled for a minimum of 40 patient contact hours per week (including hospital rounds and office administrative time as appropriate, but not including call). If Physician is not on a guaranteed income, in-office patient contact shall be as agreed upon by the physicians at the assigned practice and the St. Elizabeth Physicians President/CEO or designee. It is anticipated that all full-time Physicians shall work 40+ hours per week on average (including office time, hospital time, administrative time and other rounds as appropriate). For benefit purposes, if a physician's full-time equivalent ("FTE") status is equal to or greater than .75 of an FTE, the physician shall be eligible for full-time benefits.

If employed on a part-time basis, "part-time" basis shall mean a physician who has a full-time equivalent status ("FTE") status which is equal to or greater than .5 of an FTE but less than .75 of an FTE. SEP reserves the right to adjust compensation and benefits set forth in Exhibits B and C on a pro rata basis due to Physician's part-time status. This will be done using a pro rata adjustment based on FTE status set forth in Exhibit B. If employed on a PRN basis, "PRN" shall mean a physician who has a full-time equivalent status ("FTE") which is less than .5 of an FTE and shall not be eligible for any benefits. Physicians on a salary guarantee shall accept patient care hours as assigned by SEP. Physicians on a production-based compensation model shall schedule sufficient patient care hours to support their Benchmark Production (BP).

Physician shall provide the following professional services:

(a)    Render designated on-site and off-site professional and competent health care services and medical care to patients of SEP, including participating in SEP's call coverage and on-call list(s);

(b)    Prepare specific, accurate and timely medical records, whether by paper charts or using SEP's EMR technology as soon as it is implemented, of all medical services performed, including procedures, consultations and office visits. Such medical records shall be owned and maintained by SEP. Physician shall keep and make available to SEP such information and detailed time records as SEP may request for billing and other SEP needs and purposes;

(c)    Placing telephone calls to patients and ancillary service providers;

(d)    Performing hospital rounds;

(e)    Supervise and provide medical direction to persons who assist you in rendering professional services at SEP;

(f)    Assist in educating and training employees and office staff recruited to support in the delivery of services;

18

Effective: January 1, 2013
Physician:
SEP

(g)     Participate in SEP's quality assurance, compliance and patient satisfaction program(s);

(h)     Provide such other services that are reasonably requested by SEP;

(i)     Physician shall use consulting services of physicians and ancillary service providers as designated by the SEP Administration except in cases in which Physician determines it: (i) would not be in the patients best medical interest; (ii) would violate third-party payor restrictions; or (iii) would be contrary to patient preference;

(j)     To insure appropriate coverage of the Practice location and the Hospital Emergency Room, Physician shall participate in the Practice location and Hospital Emergency Room call rotation pursuant to SEP's standard policies and/or practices; and

(k)     Take sufficient time away from work to balance personal and professional priorities and encourage physical and mental well-being. With appropriate notice, SEP will assist Physician in finding appropriate office and call coverage for time away.

7.     **ADMINISTRATIVE SERVICES.** Physician shall devote a reasonable amount of time to provide the following administrative services:

(a)     Assist SEP in ensuring that the provision of medical services complies with all applicable policies and requirements of licensing, regulatory and accrediting bodies;

(b)     Assist SEP as needed with third-party credentialing, billing and collection matters in a specific, timely and accurate manner, including Medicare and Medicaid, and private third-party payors;

(c)     Coordinate medical care and maintain effective professional relationships with SEP physicians, as well as those on SEH's Medical Staff;

(d)     Participate in regular Medical Staff activities of SEH as required to maintain active medical staff membership and as defined by SEP;

(e)     Assist SEP in providing medical services in a fiscally efficient and effective manner;

(f)     Make appropriate arrangements for coverage during scheduled absences;

(g)     Assist SEP in recruiting and development of additional or replacement physicians;

19

Effective: January 1, 2013
Physician:
SEP

(h)    At SEP's request, Physician shall actively participate in the governance and management of SEP by serving on its Board of Directors and/or committees thereof;

(i)    Perform other administrative duties and responsibilities as may be reasonably requested by SEP; and

(j)    Participate in regular SEP activities, such as Committees, All Physician Meetings, Task Forces, etc., which promote excellence in SEP performance and communication as defined by SEP.

8.    **APPLICABLE STANDARDS**.

(a)    Physician shall perform all services hereunder in a cooperative, ethical, collegial and non-disruptive manner and in compliance with all relevant federal and state laws, regulations, and standards governing the practice of medicine, including all laws and regulations dealing with government programs and private insurance or prepaid health plans, and all rules and regulations of any hospital and hospital medical staff at which physician practices medicine. Physician shall perform all duties hereunder in conformance with all requirements of SEP and SEH policies and procedures (including but not limited to SEH's privacy policies), SEH's Medical Staff Bylaws and Rules and Regulations, and SEH's and SEP's Corporate Compliance Program. Physician shall be accountable to SEP's President.

(b)    Physician shall freely and independently exercise his/her judgment in accordance with good medical practice in the care and treatment of patients. Physician shall exercise his/her skill, learning, intelligence and experience in the evaluation, diagnosis, medication, treatment and hospitalization of patients according to his/her informed judgment, and shall not be constrained in the exercise of his/her independent judgment by the terms and conditions of this Agreement.

9.    **CONFLICT OF INTEREST**.    Physician shall not accept employment or contractual obligations with any other entity, organization or individual or otherwise engage in the private practice of medicine without prior written approval of SEP's President. Failure to acquire appropriate prior written approval will constitute a material breach of this agreement. Further, Physician agrees to execute necessary documents or certifications of disclosure pursuant to the SEP's conflict of interest policy.

10.    **OTHER DUTIES.**    So long as this Agreement shall continue in effect, Physician shall, to the satisfaction of SEP in its sole and absolute discretion fulfill the following additional responsibilities:

20

Effective: January 1, 2013
Physician:
SEP

(a)     If directed by SEP, Physician must complete, to the satisfaction of SEP, a medical history, physical exam by a physician of SEP's choosing and a drug test;

(b)     At SEP's request, Physician shall become a participating physician in any health insurance or third-party payor plan with which SEP enters into an agreement or otherwise becomes affiliated and Physician shall timely complete any credentialing paperwork;

(c)     Physician will notify SEP if he/she has <u>ever</u> had a professional license revoked, limited, suspended, or denied, either voluntarily or involuntarily and to his/her actual knowledge has ever been subject to any formal action or disciplinary proceeding before any governmental or administrative body or board other than for delinquency related to Physician's failure to timely complete medical records;

(d)     Physician agrees to comply with all rules, regulations and requirements of the Kentucky Cabinet for Health and Family Services, The Joint Commission and any other governmental or voluntary licensing or accreditation agencies with oversight responsibility for physicians, physician organizations and hospitals in Kentucky or other service areas;

(e)     Recognizing that SEH is a Catholic-sponsored hospital, Physician agrees not to practice his/her profession in conflict with any ethical and moral directives or standards applicable to or adopted by SEH, including but not limited to, the *Ethical and Religious Directives for Catholic Health Care Services*, Fifth Edition, as promulgated by the United States Conference of Catholic Bishops and any replacements or amendments thereto or thereof;

(f)     If SEP provides professional liability insurance coverage for Physician through a commercial insurance carrier, Physician shall immediately notify SEP of any notice or other information regarding cancellation of professional liability insurance maintained by SEP on behalf of Physician.  Physician shall notify SEP of any and all judgments or settlements in a malpractice action(s);

(g)     Physician shall timely advise SEP of any information about which he/she becomes aware concerning when Physician has reason to believe a claim may be presented against his/her professional liability insurance; termination, modification or suspension of medical staff privileges at a hospital or license to practice medicine; or if a third-party payor (whether government or private) questions or limits Physician's credentials.  For purposes of this subsection, "timely" is defined as three (3) business days from the day Physician learns of such information; and

(h)     Physician shall immediately notify SEP of any arrests, pleas of nolo contendere and/or no contest convictions.

Effective: January 1, 2013
Physician:
SEP

EXHIBIT B - COMPENSATION

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DICHIARA, M.D.

1.  **INTRODUCTION-COMPENSATION MODEL.**  SEP is a multi-specialty physician group dedicated to the delivery of quality medical care to residents of Northern Kentucky and the surrounding areas.  The underlying goal of this model is to compensate SEP physicians at a reasonable level that is competitive in the local and regional market, to match compensation to their productivity level, and to incentivize performance based on SEP strategic goals.

2.  **DEFINITIONS.**

    (a)  *Corporate Service Expense:*  An administrative fee of up to fourteen percent (14%) multiplied by the sum of Patient Revenue plus Market Adjustment.

    (b)  *Market Adjustment:*  All wRVUs generated by Physician during the then-current calendar year multiplied by Eleven Dollars ($11.00).

    (c)  *Mid-Level Provider ("MLP"):*  A nurse practitioner, physician assistant, or nurse mid-wife.

    (d)  *Other Revenue:*  Outside sources of revenue, other than Patient Revenue, received and posted to cash by SEP for other contractual services of Physician as described in Paragraph 3.4.

    (e)  *P4P Withhold:*  Fifteen percent (15%) of Physician's Base Compensation to be held in an at-risk pay for performance pool ("P4P Pool").

    (f)  *Patient Revenue:*  Cash received and posted by SEP for all claims billed by SEP for Physician's professional services.

    (g)  *Physician Direct Expenses ("PDE"):*  Any expense that is specifically directed by Physician to be deducted from Physician's compensation.  Examples of Physician Direct Expenses include but are not limited to:  the standard employee portion of Physician's insurance coverage, contributions to retirement plans (excluding the SEP's portion), continuing medical education in excess of the allowance granted in this Agreement.  PDE is more fully described below.

22

Effective: January 1, 2013
Physician: AJD
SEP: AJ

(h)    *Practice:*  A group of physicians in a clearly defined location or set of locations which function as a single unit.

(i)    *Practice Overhead:*  The costs and expenses of the Practice attributable/allocated to Physician.  Such costs and expenses include, but are not limited to, personnel/staffing expenses, employment benefits, and non-personnel costs such as utilities, supplies, equipment, and depreciation.

(j)    *Professional Expenses:*  The sum of the Corporate Service Expense plus Practice Overhead plus Physician Direct Expenses plus the gross dollar amount of wRVU-based payments made to Physician under Section 3.1 below.

(k)    *Professional Revenue:*  Patient Revenue plus Market Adjustment plus Other Revenue.

(l)    *Work Relative Value Unit ("wRVU"):*  A number assigned by the Centers for Medicare and Medicaid Services ("CMS") for each Current Procedural Terminology ("CPT") code that represents the physician's work effort for the service rendered.

(m)    *wRVU Base Compensation Model:*  The compensation formula described in Section 3.1 of this Exhibit B.

3.    COMPENSATION.

(a)    *Base Compensation.*  Subject to the adjustments described in Section 4 below, SEP shall pay Physician at a rate identified on the conversion factor table attached as Schedule B-3.1 ("Base Compensation Rate") multiplied by all wRVUs generated by Physician, as reflected on SEP's revenue cycle less appropriate payroll deductions, Physician Direct Expenses, and P4P Withhold, for each calendar year ("Base Compensation").

(i)    Base Compensation will be based upon the calendar year in accordance with Paragraph 18.7 of the Agreement.

(ii)    For each calendar year, wRVUs will be based upon the then-current CMS assignment of wRVUs.

(iii)    Base Compensation will be paid per a monthly draw with quarterly and annual reconciliations.  The monthly draw will be based upon 90% of Physician's projected annual income divided into twelve (12) equal installments less appropriate payroll deductions, Physician Direct Expenses, and P4P Withhold.

(iv)    If Physician is overdrawing or underdrawing based upon compensation projections, the draw will be adjusted by SEP administration after notifying Physician for the next payroll period.

Effective: January 1, 2013
Physician:
SEP

(v)    At the end of each quarter, if Physician's Base Compensation exceeds the draw, a quarterly reconciliation check will be issued within forty-five (45) days after the quarter's end.

(vi)    At the end of the calendar year, if Physician's draw exceeds Base Compensation and the quarterly reconciliations have not reconciled the discrepancy by January 31 following each calendar year, Physician shall have thirty (30) days from January 31 to repay SEP the discrepancy amount.  However, Physician may request SEP to withhold the discrepancy amount from Physician's future monthly draw(s) until paid in full.  Failure to pay the full amount of the discrepancy shall be a material breach of the Agreement and be grounds for termination with cause pursuant to Paragraph 9.2 (a) of the Agreement after review by the SEP Board of Directors.

(vii)    The Base Compensation Rate is subject to review and adjustment as described in Paragraphs 4.4 and 5.2 below.

(viii)    For Part-time physicians, the wRVU thresholds (outlined in the conversion factor table attached as Schedule B-3.1) shall be pro-rated using the Physician's actual FTE status in decimal form, but the yield per tier shall not be impacted by FTE status.

For the sake of clarity and as an example, a .5 FTE physician would have the benefit of using Tier Thresholds at 50% of Fulltime Tiers as follows:

| | | |
|---|---|---|
| Tier 1 = | Full-time wRVUs = 0-6000 | Part-time wRVUs = 0-3000 |
| Tier 2 = | Full-time wRVUs = 6001-8000 | Part-time wRVUs = 3001-4000 |
| Tier 3 = | Full-time wRVUs = 8001-10000 | Part-time wRVUs = 4001-5000 |
| Tier 4 = | Full-time wRVUs = 10001-12000 | Part-time wRVUs = 5001-6000 |
| Tier 5 = | Full-time wRVUs = 12001-14000 | Part-time wRVUs = 6001-7000 |
| Tier 6 = | Full-time wRVUs = 14001+ | Part-time wRVUs = 7001+ |

*Note: These tiers represent merely an example calculation. The actual tiers applicable to Physician under this Agreement are contained in Schedule B-3.1. In accordance with Exhibit A, FTE status below .5 FTE shall be PRN*

(b)    **Revenue Minus Expense Compensation**.  At the end of each calendar year, the difference between Physician's Professional Revenue less Professional Expenses will be calculated to determine Physician's "R-E Income." If Physician's R-E Income is a surplus, such R-E Income will be paid to Physician as additional compensation.  The R-E Income calculation is illustrated in Schedule B-3.2 attached hereto.

(c)    **Pay for Performance ("P4P") Risk Pool**.  At the end of each calendar year, Physician may earn all or a portion of the P4P Pool created from Physician's P4P Withhold proportional to Physician's performance against the P4P goals and measures

24

Effective: January 1, 2013
Physician:
SEP

for that calendar year.  P4P goals and measures will be agreed upon yearly by the SEP Board of Directors and will be aligned with SEP's strategic goals.  These goals and measures may include, but will not be limited to, factors such as quality, patient satisfaction, growth, access, corporate citizenship, and practice efficiency.

(d)  *Other Revenue.*  Because most Other Revenue requires contracting, accounting, compliance and administrative oversight from SEP, the SEP Provider Compensation Committee will make decisions regarding classes of other revenue and/or individual other revenue circumstances as follows:

(i)  Some sources of Other Revenue will be passed through in full to Physician.

(ii)  Some sources of Other Revenue will be passed through to Physician after deducting up to seven percent (7%) to reimburse SEP for administrative overhead.

(iii)  A list of known classes of Other Revenue and their treatment under subsection A or B above will be distributed annually by SEP.  Physician and SEP acknowledge that new categories of Other Revenue may arise and will be addressed when Physician shares the facts and circumstances of such Other Revenue.

(e)  *Mid-Level Providers.*  MLPs will not participate in the SEP Compensation Model in that they will not be responsible for direct practice expenses.  The attached Schedule B-3.5 provides a description of how the MLP costs and revenues will be attributed, allocated, and paid to Physician, if applicable.

(f)  *Leadership Compensation Rate*.  If Physician has a lead physician role at SEP under this Agreement, Physician shall receive a monthly stipend in accordance with Schedule B-3.6 and SEP's Compensation Policy.

(g)  *Hourly Shifts*.  If Physician will be providing professional medical services under this Agreement in after hour clinics, urgent care clinics, or other locations as requested by SEP, Physician shall be compensated for these services as described on Schedule B-3.7.

4.  ADJUSTMENTS TO COMPENSATION.

(a)  *Physician Direct Expense ("PDE").*  Physician may choose to have certain expenses deducted from Physician's Base Compensation as PDE.  Such PDE shall be deducted from Physician's Base Compensation in a manner consistent with SEP payroll policies.  PDE includes all expenses specifically directed by Physician that are not a usual and customary practice expense as defined by the SEP Provider Compensation Committee.  Under the R-E calculation, ALL Physician's non-compensation expenses

25

will be taken as PDE.  All PDE must conform with the ERDs and marketing policies and must receive prior written approval by the SEP President or designee.

(b)    ***Physician Employment Benefits.***    Physician shall be responsible for paying the employee/family portion of the costs of employment benefits for themselves and their family.

(i)    Under the wRVU Base Compensation Model, the following expenses will be paid by SEP and will not be deducted from Physician's Base Compensation:

1)    Cellular telephone.  SEP will pay Physician up to $100 per month as a taxable stipend to cover the cost of cellular telephone usage.

2)    CME.  SEP will reimburse Physician up to Three Thousand Seven Hundred Fifty Dollars ($3,750.00) per year to cover the expenses of continuing medical education including fees and expenses associated with Physician's licenses, DEA registration, board certifications, and CME meetings.

3)    Liability insurance.  SEP will pay for the cost of liability insurance and will choose the carrier as more fully described Paragraph 8 of the Agreement.

4)    Other benefits.  SEP will pay a portion of the costs of certain benefits including, but not limited to, health insurance and life insurance in accordance with SEP policies.

(ii)    Under the R-E Income calculation, all of the foregoing expenses will be allocated in full as costs to Physician.

(c)    ***Staffing Adjustment.***    Under the wRVU Base Compensation Model, at the end of each quarter each Practice's total staffing costs (staff salaries and benefits, not including MLP costs) per wRVU will be calculated and compared against benchmarks for their practice specialty set on an annual basis by the SEP Compensation Committee and approved by the SEP Board.

(i)    For Practices between 90% and 110% of the benchmark, no adjustment will be made to Physician's Base Compensation.

(ii)    For Practices with costs at 90% of benchmark and below, Physician will be paid additional compensation equal to the difference between the benchmark costs per wRVU less actual staffing costs per wRVU multiplied by the number of wRVUs.

(iii)    For Practices at 110% of benchmark and above, a deduction will be made to Physician's Base Compensation equal to the difference between the

26

Effective: January 1, 2013
Physician:
SEP

benchmark costs per wRVU less the actual staffing costs per wRVU multiplied by the number of wRVUs.

(d) ***Limitation on Base Compensation Rate.*** In order to assure that Physician's compensation does not exceed fair market value, SEP will institute a maximum on the Base Compensation Rate.

(i) A maximum will apply if Physician's total compensation in any calendar year exceeds 110% of the IHS 90th percentile annual compensation for their primary specialty ("Capped Physician").

(ii) All wRVUs greater than 110% of the 90th percentile will be compensated at the median conversion factor (IHS median compensation divided by IHS median wRVUs) for their primary specialty under the wRVU Base Compensation Model.

(e) ***Compliance Payback.*** If Physician is found to have coding compliance issues requiring payback of revenues to payor(s) and there is documented evidence that Physician has been warned in advance or provided education by SEP or outside coding and compliance consultants regarding that compliance issue, Physician will be required to repay an amount equal to the amount disallowed in accordance with the SEP Compensation Policy approved by the SEP Board.

5.    OTHER COMPENSATION ISSUES.

(a) ***Pooled Compensation by Practice.*** A Practice may choose to pool the earnings of the physicians comprising the Practice and divide these pooled earnings among themselves through a model developed by the Practice. The model by which this sharing will occur must be in writing and reviewed and approved by the SEP Provider Compensation Committee by December of the year prior to the year in which the pooling will occur (i.e. the rules for 2013 would need to be approved by December 2012) which approval will not be unreasonably withheld. Once approved, the model will not be changed until SEP's next fiscal year. For Practices of less than ten (10) physicians, one hundred percent (100%) of the Practice must agree to the proposed model in order to put the proposed model into effect. For Practices of ten (10) or more physicians, seventy-five percent (75%) of the Practice must agree to the proposed model in order to put the proposed model into effect. Prior to January 1 of any fiscal year, the Practice may decide to abandon the current pooled compensation model and return to the individual productivity model.

(b) ***Compensation Model Review.*** The compensation model in this Exhibit B and its Schedules will be reviewed annually and recommendations pertaining to adjustments or changes will be made by the SEP Board to the St. Elizabeth Healthcare Board of Trustees. As a result of the review, SEP may calculate a new Base Compensation Rate based on the then-current market conditions. SEP will provide Physician notice of any adjustments to such Base Compensation Rate within ninety (90)

27

Effective: January 1, 2013
Physician: _____
SEP _____

days prior to the beginning of the next calendar year for which the new Base Compensation Rate will be effective.

(c)    ***Physician Leaves a Practice.***  For a SEP physician to transfer from one SEP practice location to another, Physician must provide at least ninety (90) days' prior written notice unless otherwise agreed upon by the physicians at the two locations and approval of the SEP Board.  Net revenue will follow a transferred physician to the new practice location.  If Physician leaves SEP, Physician will be paid all compensation earned through their last day of employment including Physician's Base Compensation and Other Revenue through said date as provided for in this Exhibit B.  All revenue collected past Physician's termination date will be retained by SEP to offset future recruitment and hiring of physicians.

(d)    ***Physician Approval, Consent or other Action.***  Except where approval of all physicians at an office is expressly required above, any physician approval, consent or appeal required above shall be deemed as given if a majority of the physicians at such practice location give their approval or consent or request a particular action.

Effective: January 1, 2013
Physician:
SEP

SCHEDULE B-3.1

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

SEP $/wRVU Conversion Factor Table
Effective January 1, 2013

| Specialty | wRVU's | 0-25th percentile | 25th to 50th percentile | 50th to 75th percentile | 75th to 90th percentile | 90th to 110% of 90th percentile | >110% of the 90th percentile |
|---|---|---|---|---|---|---|---|
| | | Tier 1 | Tier 2 | Tier 3 | Tier 4 | Tier 5 | Tier6 |
| | (C.F.) | 90% of Median | 95% of Median | *IHS* Median | 110% of Median | 120% of Median | Median |
| GI | wRVU's | 0 - 7650 | 7651 - 9318 | 9319 - 11033 | 11034 - 12873 | 12874 - 14161 | 14162 - + |
| | (C.F.) | 44.62 | 47.10 | 49.58 | 54.54 | 59.50 | 49.58 |

Effective: January 1, 2013
Physician:
SEP

SCHEDULE B-3.2

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

SEP Revenue Minus Expense Calculation
(Effective January 1, 2013)

1. Calculation is a rolling YTD model
2. Calculation is based on individual offices
3. Patient revenue is defined as Cash posted
4. Each office agrees on a method to allocate Cash and Expenses
5. MLP impact is calculated using revenue minus direct expense with the net impact allocated to each physician in that office
6. Collectively, all SEP physicians cover the corporate and office overhead for any physician on short term disability.  This is an adjustment to calculated compensation
7. Calculation is as follows:

Cash Posted
plus
Capitation
plus
Market Adjustment (wRVU x $11.00)
plus
Other Revenue
minus
Corporate Service Expense (Cash+Cap+Mkt Adj  X 14%)
minus
Office Overhead
minus
Provider specific Benefits / Expenses
plus or minus
MLP Net Contribution
equals
Calculated Compensation
plus or minus
Adjustments

30

Effective: January 1, 2013
Physician: _____
SEP _____

SCHEDULE B-3.5

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DICHIARA, M.D.

1.   **Mid-level Provider ("MLP") Supervision Compensation.**

    a.   A MLP may be the responsibility of an individual physician, a coalition of physicians within a Practice or all the physicians in a Practice.

    b.   Physician will work together with SEP administration on the decision to hire a MLP.

    c.   For those MLPs who work for multiple physicians, the following calculations shall be made on a pro-rata basis with respect to Physician.

    d.   For each of Physician's MLPs whose practice consists of a majority of hospital visits:

        i.   Physician will be responsible to pay 50% of the full cost and expense (salary, benefits, incremental staffing costs, etc.) of the MLP ("Fully Allocated Cost") from Physician's compensation.  SEP will pay the other 50% of the MLPs Fully Allocated Cost.

        ii.   After the MLPs revenue has reimbursed 100% of SEP's portion of the MLPs Fully Allocated Costs, Physician and SEP will split the remainder of the MLPs revenue, with 50% being paid to Physician as additional compensation and 50% being applied to the MLPs department as an offset to Practice Overhead.

    e.   All other MLPs supervised by Physician:

        i.   Revenue generated by an MLP ("MLP Revenue") will be attributed to Physician after the full cost and expense (salary, benefits, incremental staffing costs, etc.) of the MLP ("Fully Allocated Cost") has been offset against such revenue.  Mathematically the formula will be: MLP Revenue less Fully Allocated Costs equals MLP Net Revenue.  If the MLP Net Revenue is a surplus, such MLP Net Revenue will be paid to Physician as additional compensation. If the MLP Net Revenue is a deficit, such MLP Net Revenue will be deducted from Physician's Base Compensation.

31

Effective: January 1, 2013
Physician:
SEP

SCHEDULE B-3.6

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

1. **Lead Physician Compensation.**

   a.  During the first twelve (12) months of the Initial Term of this Agreement, SEP shall pay Physician a monthly stipend as a Lead Physician for performing the duties described in SEP's Lead Physician job description, incorporated herein by reference.  Such stipend shall be based on the number of professionals Physician manages at their office location using the grid outlined below ("Lead Physician Stipend").

   | # of Professionals | Monthly Stipend |
   | --- | --- |
   | 1 – 3   physicians | $500 |
   | 4 – 6   physicians | $750 |
   | 7 – 10 physicians | $1000 |
   | >10     physicians | $1250 |
   | After Hours Clinic | $1250 |
   | Arrhythmia Clinic | $833.33 |

   b.  For the second and third years of employment and each Renewal Term thereafter, SEP will review Physician's Lead Physician Stipend.  As a result of the review, SEP may calculate a new Lead Physician Stipend based on the then-current market conditions.

   c.  SEP will provide Physician notice of any adjustments to such rate within ninety (90) days prior to the beginning of the next calendar year for which the new rate will be effective.

2. **Medical Director.**

   a.  During the first twelve (12) months of the Initial Term of this Agreement, SEP shall pay Physician a monthly stipend as a Medical Director for performing the duties described in SEP's medical director job description, incorporated herein by reference.  Compensation shall be set at a rate of Two Thousand Eighty-Three Dollars and 33/100 ($2,083.33) per month for each .1 FTE amount of work performed as a Medical Director.  Such stipend shall be paid on a pro-rata FTE basis as follows ("Medical Director Stipend"):

32

Effective: January 1, 2013
Physician: _____
SEP _____

     i.     0.1 FTE = $2,083.33 per month

     ii.     0.2 FTE = $4,166.66 per month

     iii.     0.3 FTE = $6,249.99 per month

     iv.     0.4 FTE = $8,333.32 per month

b.     For the second and third years of employment and each Renewal Term thereafter, SEP will review Physician's Medical Director Stipend.  As a result of the review, SEP may calculate a new Medical Director Stipend based on the then-current market conditions.

c.     SEP will provide Physician with ninety (90) days' prior written notice of any adjustments to such rate.

Effective: January 1, 2013
Physician:
SEP

SCHEDULE B-3.7

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

1.    **PRN Hourly Compensation.**    Physician shall be paid as follows for PRN Hospitalist work:

    a.    Shift Pay: Physician shall be paid One Thousand Dollars ($1,000.00) per hospitalist shift worked.

    b.    Productivity Pay: Physician will be paid Ten Dollars ($10.00) per work RVU billed by SEP for Physician's services during Physician's hospitalist shift.

    c.    From time to time, an additional amount may be added to the hourly rate for hard-to-cover shifts or holidays.

    d.    These rates are subject to review and change by the SEP Provider Compensation Committee from time to time.

2.    **Urgent Care Compensation.**    Physician shall be paid as follows for PRN Urgent Care work:

    e.    Weekday Pay: Physician shall be paid Eighty Dollars ($80.00) per hour worked plus Fifteen Dollars ($15.00) per patient seen, for work performed Monday through Friday in an after-hours location.

    f.    Weekend Pay: Physician shall be paid One Hundred Dollars ($100.00) per hour worked plus Fifteen Dollars ($15.00) per patient seen, for work performed on Saturday or Sunday in an after-hours location.

    g.    From time to time, an additional amount may be added to the hourly rate for hard-to-cover shifts or holidays.

    h.    These rates are subject to review and change by the SEP Provider Compensation Committee from time to time.

3.    **Withholding.**    All compensation in this Schedule B-3.7 is subject to all applicable withholding and deductions.

Effective: January 1, 2013
Physician:
SEP

**EXHIBIT C – BENEFITS**

**TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DICHIARA, M.D.**

Physician shall be eligible for the same benefits as are presently available to other SEP physicians.  Physician shall be responsible for the standard employee portion of their health and dental insurance.  The list of benefits may be changed by Board of Directors from time to time.  Attached are benefits for current year available to SEP physicians.  Additionally, Physician shall be entitled to the following:

<u>Vacation</u> – While on guaranteed base salary, Physician shall be entitled to no more than four (4) weeks of combined vacation and CME.  Thereafter, vacation and other time away from the office will be determined and approved by the physicians in the office in which Physician practices and based upon approval of SEP.  Vacation and CME may not be carried over to subsequent years.

Effective: January 1, 2013
Physician:
SEP

EXHIBIT D

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DiCHIARA, M.D.

1.    Outside Medical Staff Membership.  SEP agrees that Physician may maintain medical staff membership at, and admit patients to, the following facilities:

**Facility**

2.    Outside Activities.  SEP and Physician agree that the following list of outside activities constitutes Physician's outside professional services ("Outside Activities") and shall be considered outside the scope of this Employment Agreement:

**Service Description**                              **Scope of Service**

3.    Insurance.  SEP shall not provide malpractice liability coverage or have any other responsibility for Physician's Outside Activities or any other activities that are outside the scope of this Agreement.

4.    Future Outside Activities.  Physician is permitted to pursue and maintain medical directorship of facilities that do not compete with SEP, St. Elizabeth or any affiliate of SEP or St. Elizabeth subject to Paragraph 4.3 of this Employment Agreement.

36

Effective: January 1, 2013
Physician:
SEP

EXHIBIT E

TO THE EMPLOYMENT AGREEMENT
BETWEEN
ST. ELIZABETH PHYSICIANS
AND
AMY J. DICHIARA, M.D.

1.    COMPENSATION.  During the first twelve (12) months of employment, Physician shall have a guaranteed base salary of Two Hundred Thousand Dollars ($200,000.00) assuming he/she maintains a schedule which accommodates 20 patient contact hours per week.  If during the first year patient contact hours decrease, the guaranteed base salary will be adjusted accordingly.  Physician is eligible to earn additional compensation as set forth by the Compensation Model in Exhibit B.  However, during the first twelve (12) months, Physician's guaranteed base salary will not be reduced by any negative discrepancy pursuant to the Compensation Model.  There will not be any deduction for malpractice insurance premiums from Physician's paycheck while on a salary guarantee.

2.    RETENTION BONUS.  In addition to the compensation provided for in Section 1 above, Physician shall receive a Fifteen Thousand One Hundred Sixty-One Dollars and 36/100 ($15,161.36) retention bonus, payable for one (1) year.  The bonus payment will be made on the first anniversary of this Agreement's Effective Date.  Physician's eligibility to receive this bonus is conditioned on his/her active employment with SEP on the calendar day any such bonus is scheduled to be paid.  The annual bonus payable to Physician shall be included in Physician's taxable wages for purposes of all governmental payroll reporting related to Physician's compensation for the period in which shall bonuses are scheduled as payable.

3.    MONTHLY MEETINGS/MENTORING.  Physician may be required to meet up to monthly with the CEO or their designee during the first twelve (12) months of employment.

4.    EMPLOYMENT.  The terms set forth in this Exhibit E are designed to increase the likelihood of success for new physicians to SEP and increase physician retention.  The terms in this Exhibit E only apply during the first twelve (12) months of employment as stated herein.

5.    RELOCATION.  Physician will be reimbursed up to $5,000 for expenses related to relocation based upon receipts submitted.

37

Effective: January 1, 2013
Physician:
SEP