IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| DR. AMY DICHIARA | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-00111-DLB |
| | : | |
| v. | : | Judge David L. Bunning |
| | : | |
| SUMMIT MEDICAL GROUP, INC., et al. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TESTIMONY
AND OPINIONS AND ROBB STOKAR, ESQ.**

Plaintiff, through Counsel, Opposes Defendants' Motion to Exclude the testimony of Robb Stokar, Esq. (Doc. 59). Defendants misapprehend the purpose and nature of the proffered testimony, suggesting that it is merely legal argument or opinions, which is the function of the court. *Id.* But that is not what or why the opinions are rendered, and, as explained below, the opinion testimony is permissible.

I.  **Standard for expert opinion admission**

Under Rule 702 of the Federal Rules of Evidence, an expert's opinion must satisfy three requirements to be admissible. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2006). The Court assumes the role of a gatekeeper to determine that the testimony is reliable and relevant when a party's expert witness is challenged. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).

1

If qualified, an expert may testify if his knowledge will aid the trier of fact and where his opinions are based on sufficient data, reliable methods, and the facts of the case. *Id.* Rejection of expert testimony under *Daubert* is the exception rather than the rule. *In re Scrap Metal,* 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee notes); *see also Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (reversing district court in excluding an economic expert as unreliable, noting that the testimony would be helpful to the jury and the weaknesses in the expert's testimony would be subject to vigorous cross-examination); *Dilts v. United Group Servs.*, LLC, 500 Fed. Appx. 440, 444 (reversing the district court's exclusion of an accident reconstruction expert's testimony as unreliable where the expert performed calculations and relied on methods generally employed in accident reconstruction); *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. 2013) (reversing a district court's exclusion of expert testimony as unhelpful, noting that factors he failed to consider in his opinion could be highlighted on cross-examination).

To be relevant, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact at issue." *United States v. Bonds*, 12 F.3d 540, 557 (6th Cir. 1993) (citing *Daubert*, 509 U.S. at 591).

Generally, an opinion is not objectionable merely because it embraces an ultimate issue. Fed. R. Evid. 704(a). However, the issue embraced by the expert's opinion may not answer the final question of liability. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so."). As opposed to different opinions on issues of fact which would require determination by a jury, issues of law are resolved by the Court. *See Baltimore & Carolina Line, Inc. v. Redman*, 295

U.S. 654, 657 (1935) ("issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court").

However, when expert testimony assists in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court, limited expert opinion testimony is permissible. *United States v. Gallion*, 257 F.R.D. 141, 147 (EDKY 2009), *but, see, United States v. Cunningham*, 679 F.3d 355 (6th Cir. 2012) (finding district court erred in finding attorney who was an expert was not qualified, but finding that the expert's exclusion was appropriate because the attorney's report contained misstatements of law).

In *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) the Sixth Circuit explained that "[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case."

## II. Mr. Stokar's report and opinions are relevant, reliable, and admissible

### A. Mr. Stokar is qualified

Mr. Stokar's report, and his C.V., demonstrate 17 years of handling Plaintiff's labor and employment law, from the employee/labor side of that arena. (Doc. 53-2, PageID#3268-3288). Mr. Stokar recounts various representative matters handling Plaintiff's Title VII and Americans with Disability Act ("ADA") matters. *Id.* He recounts handling more than 50 such matters as lead counsel. *Id.* at PageID#3165. Mr. Stokar's qualifications including "numerous [Title VII and ADA cases], is far more substantial than the typical attorney's." *Cunningham*, 679 F.3d 355, 379. "And any deficiencies in his professional background or credentials could have been probed on cross-examination." *Id.* And, Defendants do not challenge Mr. Stokar's qualifications. (Doc. 51). They instead argue that the proffered testimony is inadmissible as improper legal determinations.

B.  <u>The testimony is relevant and is not an improper legal conclusion</u>

Mr. Stokar's opinions are also relevant. For "participation" clause retaliation claims, and specifically those premises upon provision of documents to an attorney, under federal and Kentucky law, liability for retaliation is not dependent only on the relevance of documents provided to an attorney, but alternatively whether a client "reasonably believes" that such documents are relevant. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 722 (6th Cir. 2008). Thus, even if a document is not relevant, it is still protected participation clause activity if a client "reasonably believes" that the documents are relevant. For "opposition" clause claims, courts evaluate reasonableness. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). In terms of the provision of documents in litigation, courts evaluate reasonableness under factors established by the Sixth Circuit in *Niswander*, 529 F.3d 714, 722.

Several points are in order: Mr. Stokar is <u>not</u> offering any ultimate conclusions, i.e. whether Defendants are in fact liable under federal or state anti-retaliation laws. In fact, Mr. Stokar's report and opinions are tailored towards the facts of this matter and the provision of documents in question, though he does not opine whether or not Dr. DiChiara participated or opposed activities made illegal under Title VII or the ADA. Said another way, he is not opining on whether Dr. DiChiara in fact engaged in protected activity. But he is providing background and context in a complex area of the law to assist in formulating that opinion.

Instead, his opinions are whether the documents Dr. DiChiara provided were relevant to the Title VII and ADA claims in *Beckerich*, and he explains his methodology. (Doc. 53-2). His testimony is thus relevant for two reasons: first, it explains the underlying activity in the context of relevance to the underlying claims, and second, it provides context of the "reasonableness" of Dr. DiChiara's belief that the documents were relevant. Both of these issues are central (and

4

plainly relevant) to the retaliation claims under state and federal law, as explained in *Niswander*, 529 F.3d 714, 722.

Moreover, district courts may admit such expert testimony "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury[.]" *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (*citing* Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2003)). Several cases from this court rely upon this precedent in admitting similar testimony. *United States v. Akers*, 2020 U.S. Dist. LEXIS 69928 (KYED 2020); *United States v. Lundergan*, 2019 U.S. Dist. LEXIS 136019 (EDKY 2019); *United States v. Gallion*, 257 F.R.D. 141, 2009 U.S. Dist. LEXIS 29553 (EDKY 2009).

*Gallion* and *Lundergan*, in particular, are highly instructive to the issues here. In *Gallion*, expert testimony was adduced in a case involving criminal allegations against an attorney. Expert legal testimony was adduced by the Government about the underlying lawsuit that then gave rise to the criminal charges – including about class action practice, an attorney's duties in that context. *Id.* at 144-147. All of that testimony was consistent with the legal determinations of the court. *Id.* But the Court did not permit the admission of defense expert materials that did not comport with the Court's view of the law. *Id.*

In *Lundergan*, the Court admitted an expert that addressed campaign finance law, because what was at issue in that case was compliance with a complex regulatory regime. 2019 U.S. Dist. LEXIS 136019. And, relying upon *Gallion*, the Court observed that expert testimony by legal experts is permissible in cases "where [it] would assist in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court."

Although an expert opinion that embraces the ultimate issue is not *per se* inadmissible, there is a "subtle" but "important" distinction between expert testimony stating facts to support a

certain finding and impermissible legal conclusions on the ultimate issue. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Even so, courts "generally exclude[] expert testimony for stating a 'legal conclusion' only when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). Yet none of Mr. Stokar's opinions indicate that Defendants did, or did not, violate the law. In fact, none of his testimony even addresses the application of the law to this case. *Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016) ("[a]n expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case"). Instead, his testimony instead relates to facts and the relevance of documents provided to the Deters firm in the context of what a reasonable employment Plaintiff's lawyer would want to address ADA and Title VII claims, and that was in reference to the *Beckerich* case, not this case. Thus, the principal announced in *Babb* is not at issue.

  Incidentally, *Babb* involved a case where the district court excluded, under *Daubert*, standard of care testimony consistent with that offered by Mr. Stokar here, as an improper legal opinion. The *Daubert* decision was reversed, however, because, as is the case here, the standard of care opinion went to a critical issue in the ADA case, and the expert did not opine of a ultimate legal issue.

  For their part, Defendants cite to inapposite cases that deal with the exclusion of expert opinions that render "ultimate" issue testimony – but, as demonstrated, that is not the case here.

  In *Lundergan*, 2019 U.S. Dist. LEXIS 136019, the court admitted expert testimony on campaign finance law in a case charging willful violations of that law. It did so, because the testimony was helpful and reliable.

Thus, the expert testimony here assists in explaining legal concepts, and such opinions are not (at least as far as we know) inconsistent with the instructions to be given by the Court. Thus, limited expert opinion testimony is permissible. *Gallion*, 257 F.R.D. 141, 147 ("where expert testimony would assist in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court, limited expert opinion testimony is permissible").

An expert may provide facts and analysis which lead the jury toward a final conclusion, so long as that conclusion itself is not reached. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702, 2009 WL 8592874, at *4 (N.D. Ohio 2009), aff'd, 511 F. App'x 398, 412-413 (6th Cir. 2013) (exclusion of trade secret expert not warranted where the expert "offered opinions on certain subsidiary components of the overall issue" but did not opine whether the information was or was not a trade secret). *See also Raytheon Co. v. Indigo Sys. Corp.*, 598 F. Supp. 2d 817, 822 (E.D. Tex. 2009) (expert's "opinion that certain trade secrets consist merely of information that was in the public domain at the time of the alleged misappropriation is relevant and within his sphere of expertise"); *United States Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 756 (N.D. Ill. 2009) (permitting opinion testimony on "what information was generally available in the wallboard industry"); *Iofina, Inc. v. Igor Khalev*, No. CIV-14-1328-M, 2016 U.S. Dist. LEXIS 147440, 2016 WL 6246730, at *3 (W.D. Okla. Oct. 25, 2016) ("Mr. Brix will not be testifying regarding the ultimate issue of whether any of plaintiffs' alleged trade secrets are, in fact, trade secrets. . . . Mr. Brix limits his opinions to whether certain matters are generally known or readily ascertainable by others engaged in the business of iodine extraction").

Despite the Defendants' arguments to the contrary, the report does not express a conclusion, but rather explains a process. Read correctly, it walks the fact finder through the steps an experienced plaintiff's lawyer would use to evaluate a potential case and the types of information that would be relevant to such an evaluation, not decide the merits. This factual, process-oriented approach would help a jury understand why a lawyer might take certain actions, such as consult with individuals familiar with a particular industry or topic, in prosecuting a Title VII or ADA claim, which in turn assists a factfinding in determining that Dr. DiChiara's actions here were reasonable.

By way of example, a plaintiff's lawyer investigating a whistleblower claim in the airline industry would be keen to consult with an aviation expert to determine the import of the conduct highlighted by a potential client/plaintiff. If it were discovered, through this research, that the complaint made by the potential client/plaintiff were immaterial to aviation safety, it would change the metric on the "reasonable belief" the potential client had in his/her reporting. A typical jury of laypeople will be assisted in understanding the evidence (Dr. DiChiara's communications with attorneys) and reaching the ultimate questions of fact.

In *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 2009 WL 8592874, at *4 (N.D. Ohio 2009), *aff'd*, 511 F. App'x 398, 412-413 (6th Cir. 2013), the court found that the exclusion of trade secret expert not warranted where the expert "offered opinions on certain subsidiary components of the overall issue" but did not opine whether the information was or was not a trade secret. That is true here as well. Mr. Stokar's testimony has a bearing on "certain subsidiary components of the overall issue," but does not reach the ultimate conclusions of Defendants' liability. *See, also Sierra v. Williamson*, No. 4:10-CV-00079, 2013 U.S. Dist. LEXIS 8444, 2013 WL 228333, at *7 (W.D. Ky. Jan. 22,

2013) ("Whether an expert's testimony embraces an improper legal conclusion often turns on the phrasing of the question posed.")

Part of the significant difficulty here, is that Defendants never deposed Mr. Stokar. Defendants noticed his deposition, and he was prepared to be deposed, before Defendants unilaterally, and without explanation, withdrew their notice. *See* Exhibit A, email. They offer nothing by way of their motion other than his report, and rank speculation to attempt to challenge his testimony. Typically, that is grounds to deny a *Daubert* motion. *Sierra*, 2013 U.S. Dist. LEXIS 8444 (denying *Daubert* motion without prejudice to exclude trusts attorney expert testimony in case challenging trust, noting that without deposition testimony, it is not possible to determine relevance and reliability). And it should be here as well. *Cook v. Erie Ins. Co.*, No. 2:18-CV-00282, 2022 U.S. Dist. LEXIS 119496, 2022 WL 2467528, at *3 (S.D. Ohio July 6, 2022) (stating that the expert was permitted to reference the workers compensation lien and probate statutes because she was testifying as to standard industry practices and her experience with handling both); *See, also, United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) (finding trial court erred in precluding expert from testifying regarding her explanation of a detailed banking regulation); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) (allowing expert to testify regarding custom and practices of defense industry under Armed Services Procurement Act of 1947).

C. <u>The testimony is reliable</u>

While Rule 702 establishes a general framework for assessing the reliability of expert testimony, the Supreme Court in *Daubert*, clarified that a court's focus "must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." 509 U.S. 579, 595. *Daubert* requires this Court to "ensure that any and all scientific testimony or evidence

9

admitted is not only relevant, but reliable." *Id.* at 589; *see also Kumho Tire Co., Ltd., et al. v. Carmichael, etc., et al.*, 526 U.S. 137, 141 (1999) (extending this reasoning to all expert testimony).

When evaluating the reliability of non-scientific expert testimony, the district court may forgo these factors and focus on the reliability of the expert's personal knowledge or experience. *Thomas v. City of Chattanooga*, 398 F.3d 426, 431-32 (6th Cir. 2005). In this situation, the expert cannot ask a court simply to take his "word for it," but "'must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts.'" *Id.* at 432. Mr. Stokar does exactly that in his report, and "shows his work," permitting the court to assess that his methodology is based on sound principles of employment law, and establishing reliability.

This Court has permitted expert testimony and found it reliable where it is based on an expert's "reliable foundation of his knowledge and experience in th[e] area." *Blackburn v. United States*, 2024 U.S. Dist. LEXIS 26506 at *12-*12 (KYED 2024). And, as in *Blackburn*, Mr. Stokar's opinions rely upon the salient testimony and evidence in the record (see Doc. 52-2 at PageID#3168), and Mr. Stokar explains, in detail, how and why he reached the conclusions he reached, proving reliability. *Id.* at PageID#3169-3178. There is nothing in his methodology that is unreliable, or that misstates the applicable law.

Moreover, district courts may admit such expert testimony "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury[.]"*Offill*, 666 F.3d 168, 175 (*citing* Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2003)). In *Lundergan*, 2019 U.S. Dist. LEXIS 136019, the court admitted expert testimony on

10

campaign finance law in a case charging willful violations of that law. It did so, because the testimony was helpful and reliable.

Thus, the expert testimony here assists in explaining legal concepts, and such opinions are not (at least as far as we know) inconsistent with the instructions to be given by the Court. Thus, limited expert opinion testimony is permissible. *Gallion*, 257 F.R.D. 141, 147 ("where expert testimony would assist in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court, limited expert opinion testimony is permissible").

And similar testimony has been found reliable in similar contexts. *Allied Erecting & Dismantling Co.*, 649 F. Supp. 2d 702, 2009 WL 8592874, at *4, aff'd, 511 F. App'x 398, 412-413 (6th Cir. 2013); *Raytheon Co.*, 598 F. Supp. 2d 817, 822; *Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 756; *Iofina, Inc.*, No. CIV-14-1328-M, 2016 U.S. Dist. LEXIS 147440, 2016 WL 6246730, at *3.

Again, and finally, part of the significant difficulty here, is that Defendants never deposed Mr. Stokar. They offer nothing by way of their motion other than his report, rank speculation and supposition about what explicitly he will say. Typically, that is grounds to deny a *Daubert* motion. *Sierra*, 2013 U.S. Dist. LEXIS 8444 (denying *Daubert* motion without prejudice to exclude trusts attorney expert testimony in case challenging trust, noting that without deposition testimony, it is not possible to determine relevance and reliability).

### III. CONCLUSION

Defendants' Motion to strike the testimony of Robb Stokar, Esq. (Doc. 59) should be denied: he is qualified, the testimony is relevant, and the proffered testimony is reliable, satisfying *Daubert*.

11

Respectfully submitted,

/s/ Christopher Wiest_____  /s/Thomas Bruns_____
Christopher Wiest (KBA 90725)     Thomas Bruns (KBA 84985)
Chris Wiest, Atty at Law, PLLC    Bruns Connell Vollmar & Armstrong LLC
50 E. Rivercenter Blvd, Ste. 1280 4555 Lake Forest Drive, Ste. 330
Covington, KY 41011               Cincinnati, OH 45242
513/257-1895 (c)                  513/312-9890 (v)
859/495-0803 (f)                  tbruns@bcvalaw.com
chris@cwiestlaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by electronic mail this 30 day of September, 2024.

                                            /s/ Christopher Wiest_____
                                            Christopher Wiest (KBA 90725)