IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| DR. AMY DICHIARA | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-00111-DLB-EBA |
| | : | |
| v. | : | Judge David L. Bunning |
| | : | |
| SUMMIT MEDICAL GROUP, INC., et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE TESTIMONY AND OPINIONS OF ROBB STOKAR, ESQ.**

Come now the Defendants, Summit Medical Group, Inc. d/b/a St. Elizabeth Physicians ("SEP"); Saint Elizabeth Medical Center, Inc. d/b/a St. Elizabeth Healthcare ("St. Elizabeth"); Dr. Robert Prichard; and Garren Colvin (collectively referred to as "Defendants"), by and through counsel, and for their Reply Memorandum in Support of their Motion to Exclude Testimony and Opinions of Robb Stokar, Esq., state as follows:

**ARGUMENT**

**I.  Plaintiff ignores the legal conclusions throughout Mr. Stokar's report.**

In an attempt to overcome Defendants' motion, Plaintiff primarily argues that Mr. Stokar is not seeking to offer legal conclusions in this case. In doing so, Plaintiff blatantly ignores the opinions set forth in Mr. Stokar's report. First, Plaintiff erroneously claims that Mr. Stokar "is not opining on whether Dr. DiChiara in fact engaged in protected activity." (Doc. No. 56, p. 4) Nothing could be further from the truth. Indeed, Mr. Stokar expressly states as follows in his report:

> By all accounts, it is clear to me that **Dr. DiChiara was participating in the prosecution of Title VII and ADA claims and is entitled to legal protection for such participation; including to be free of any retaliation to include tangible adverse employment acts**.

(Doc. No. 51-2, p. 15) (emphasis added). And he reiterates this exact same legal conclusion in the Declaration attached to Plaintiff's motion for partial summary judgment:

> That is why I have no difficulty in determining that **Dr. DiChiara engaged in activity that is protected by both the opposition and participation clauses in Title VII and ADA anti-retaliation provisions** …

(Doc. No. 53-2, ¶ 7) (emphasis added). It could not be more clear. Mr. Stokar intends to tell the jury that Plaintiff engaged in protected activity.

Incredibly, Plaintiff also claims that "none of [Mr. Stokar's] testimony even addresses the application of law to this case." (Doc. No. 56, p. 6) Mr. Stokar himself states the exact opposite:

> My conclusions and opinions are correct when applying the facts as I know them to the applicable law.

(Doc. No. 51-2, p. 15) Thus, Mr. Stokar's report in its entirety reads as a legal brief. He sets forth the facts of both the *Beckerich* case and the facts at issue in this litigation. (Doc. No. 51-2, pp. 3-5) Next, he cites to the legal standards applicable to claims under Title VII and the ADA. (Id., pp. 8, 11) Then, he proceeds to apply the cited legal standards to the facts he references. (Id., pp. 7-15) This proffered testimony constitutes an impermissible legal conclusion, as Plaintiff herself concedes. (Doc. No. 56, p. 6) (citing *United States v. Melcher*, 672 Fed. Appx. 547, 552 (6th Cir. 2016) ("An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case."))

It is indisputable that impermissible legal conclusions permeate Mr. Stokar's report. Through Mr. Stokar's opinions, Plaintiff is therefore seeking to tell the jury, and this Court, how it

2

should rule on Plaintiff's claims.  As set forth in *Ray v. AT&T Mobility LLC*, 2020 WL 535787, (E.D. Ky. Feb. 3, 2020), this constitutes improper expert testimony.  *Id.* at *8.

In *Ray*, this Court excluded the proffered expert testimony of Scott R. Bauries, J.D., Ph.D. because his testimony was flawed and made impermissible legal conclusions. *Id.* at **6-7.  As noted by this Court, Dr. Bauries' report was "filled with a litany of legal conclusions that violate[d] Rule 704."  *Id.* at *8.  Many of these legal conclusions related to whether the defendant interfered with the plaintiff's FMLA rights, whether the defendant's actions constituted a violation of the FMLA for failure to grant leave, and whether the defendant retaliated against the plaintiff for exercising his FMLA rights.  *Id.*  In excluding the expert's opinions and testimony in their entirety, this Court held that the proffered opinions were "textbook attempts to offer legal conclusions." *Id.*; *see also Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (affirming district court's exclusion of expert witness's report because the report contained a recitation of legal principles and read as a legal brief).

Courts outside of the Sixth Circuit have also excluded similar testimony.  For example, in *Bley v. Indep. Sch. Dist. No. 1-002 of Okla Cnty.*, 2023 WL 3608909 (W.D. Okla. May 9, 2023), the district court excluded the proffered expert testimony of an attorney experienced in ADA and FMLA cases because the attorney expert was making impermissible and unreliable legal conclusions. *Id.* at *4.  The attorney expert's report stated that the defendant's accommodation process was not compliant with the ADA, that it engaged in the wrong disability analysis under the ADA, that it would not have suffered undue hardship by accommodating the request, and that it failed to comply with the FMLA.  *Id.* at *2.  In excluding these opinions in their entirety, the court paid particular attention to the concerns associated with having an attorney serve as an expert:

3

> When an attorney testifies as an expert witness, there is a substantial danger the jury will simply adopt the expert's conclusions rather than making its own decision.

*Id.* (internal quotation marks omitted).

The rationale used to exclude improper expert testimony in the above cases is equally applicable to the opinions that Mr. Stokar seeks to offer in this case. Mr. Stokar's report is "filled with a litany of legal conclusions" regarding whether Plaintiff engaged in protected activity and whether Defendants failed to offer a reasonable accommodation as required by the ADA. As this Court has noted, "these are "textbook attempts to offer legal conclusions." Accordingly, Mr. Stokar's opinions and testimony should be excluded.

**II.     The cases cited by Plaintiff are easily distinguishable.**

Plaintiff cites several cases from this district in an attempt to argue that Mr. Stokar's opinions are permissible. In reality, the cases Plaintiff cites are inapposite and easily distinguishable. Indeed, many involve the opinions of experts in complex, technical and specialized fields, such as campaign finance law and infrared imaging fabrication. For example, in *U.S. v. Gallion*, 257 F.R.D. 141 (E.D. Ky. 2009), the proffered expert was addressing complex issues in a criminal case related to the difference between a class action settlement and an aggregate settlement subject to the provisions of SCR 3.130-1.8(g). *Id.* at 145-46. The Court explained that "expert testimony on issues of law is typically excluded," and only in "narrow circumstances" (*i.e.*, when the expert is addressing complex issues) may limited expert testimony be permissible. *Id.* at 147. However, the Court in that case still excluded the expert because he was unqualified, he incorrectly stated the law and his opinions were irrelevant. *Id.* at 148, 154.[1]

---

[1] The Court therein found that the proffered expert **did not** meet the Rule 702 requirements to testify as an expert despite working as an attorney for nearly three decades. *Id.* at 148. The Court explained that there was no evidence to set the proffered expert apart from any other lawyer with

4

Plaintiff also cites to another criminal case, *U.S. v. Lundergan*, 2019 WL 3804239 (E.D. Ky. Aug. 13, 2019), where the defendants were accused of violations of the Federal Election Campaign Act. *Id.* at *1. The plaintiff's expert witnesses were former officials of the Federal Election Commission ("FEC"). *Id.* While the Court held that the expert opinions were admissible, it did so because their testimony would help explain "the complex regulatory scheme" that was at the heart of the case. *Id.* at *3. However, the Court also explicitly prohibited the experts from testifying as to whether the defendants' actions fell within or outside the bounds of permissible conduct under the Federal Election Campaign Act. *Id.* In fact, the Court explained that any such testimony is "precisely the type of broad, determinative testimony that is typically beyond the scope of expert opinion." *Id.*

Unlike Mr. Stokar's opinions at issue herein, the remaining cases cited by Plaintiff involved expert opinions related to specialized knowledge of a complex or technical field. *See Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Mfg., Inc.*, 2009 WL 8592874, *3 (N.D. Ohio Aug. 12, 2009) (admitting expert testimony of mechanical engineer relating to complex engineering principles in an intellectual property case); *Raytheon Co. v. Indigo Systems Corp.*, 598 F. Supp. 2d 817, 820 (E.D. Tx. 2009) (admitting expert testimony of a technician in infrared imaging fabrication); *U.S. Gypsum Co. v. Lafarge North America, Inc.*, 670 F. Supp. 2d 748, 752 (N.D. Ill. 2009) (admitting expert testimony of a chemical engineer experienced in the manufacturing processes of wallboard, wallboard manufacturing, and market conditions affecting the wallboard industry). Importantly, none of the cases cited by Plaintiff support the admission of attorney expert testimony where the attorney is attempting to opine on basic legal principles.

---

experience as an advocate in a particular area of law, and "surely, not every lawyer with experience qualifies as an expert in his or her practice area." *Id.* at 148-49.

### III. The process by which Mr. Stokar would evaluate a potential case is not relevant expert testimony.

Plaintiff alleges that Mr. Stokar's report does not offer impermissible legal conclusions, but instead "walks the fact finder through the steps an experienced plaintiff's lawyer would use to evaluate a potential case and the types of information that would be relevant to such an evaluation …" (Doc. No. 56, p. 8) This process is not relevant to Plaintiff's Title VII and ADA claims, nor does it address complex legal issues.

"Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." *Sierra v. Williamson*, 2013 WL 228333, * 7 (W.D. Ky. Jan. 22, 2013). Thus, "Rules 701, 702, and 403 provide ample assurances against the admission of opinions which would merely tell the jury what result to reach." *Id.* More specifically, Rule 702 requires that an expert's testimony involve "specialized knowledge" that "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). As this Court has held, "if the subject matter is not complex or technical, expert testimony is not necessary." *Ray v. AT&T Mobility, LLC*, 2020 WL 535787, *7 (E.D. Ky. Feb. 3, 2020) (internal citation omitted).

Rules 701, 702 and 403 operate to exclude precisely the type of testimony that Mr. Stokar seeks to offer. Aside from Mr. Stokar's primary testimony offering impermissible legal conclusions, his remaining opinions about his personal process in evaluating a potential case are not "helpful to the trier of fact to understand the evidence," nor do they involve "complex or technical" issues. Title VII and ADA claims are routinely tried in front of juries without expert attorney witnesses explaining the legal standards and issues. Moreover, "it is not for the witness to instruct the jury as to the applicable principles of law, but for the judge." *Sierra*, 2013 WL 228333, at *7 (internal citation omitted). The jury can certainly draw from common sense and

establish its own conclusions at the trial of this matter without the knowledge of Mr. Stokar's personal process of evaluating a case as a plaintiff's side employment lawyer. *Ray*, 2020 WL 535787, at *7 ("It is well established that expert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic.").

**IV.     Mr. Stokar's deposition would have been an unnecessary waste of time and resources.**

Finally, Plaintiff argues that Mr. Stokar's opinions and testimony should be permitted because the Defendants chose not to depose him.  This argument overlooks the rationale for requiring parties to submit expert reports.  Indeed, Rule 26(a)(2) of the Federal Rules of Civil Procedure is meant to allow both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case.  By requiring experts to provide a complete report with the substance of the testimony which the expert is expected to give on direct examination, expert reports "minimize the need for expert depositions, especially in light of the fact that, pursuant to Rule 26(b)(4)(C), the party taking the expert's deposition must usually pay a reasonable fee for the expert's time." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007); *see also Spurlock v. Fox*, 2010 WL 3807167, *2 (M.D. Tenn. Sep. 23, 2010) ("[T]he test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.").

Despite Plaintiff's argument to the contrary, Defendants are not resorting to "rank speculation" to discern the opinions Mr. Stokar seeks to offer in this case. (Doc. No. 56, p. 9)  Mr. Stokar's report was fifteen pages in length.  And as previously stated, it reads as a legal brief that gives an exact roadmap of the opinions he is attempting to offer in this case.  He identifies the facts as he sees them in both the *Beckerich* case and this case. (Doc. No. 51-2, pp. 3-5)  He then cites

7

legal standards applicable to claims under Title VII and the ADA. (Id., pp. 8, 11) Finally, he applies the cited legal standards to the facts he references. (Id., pp. 7-15) In light of the nature and substance of Mr. Stokar's report, his deposition would have been entirely unnecessary. Plaintiff's insistence that Defendants were nevertheless required to depose Mr. Stokar – and incur fees of $3,000.00 for the deposition, regardless of how long the deposition took (Id., p. 3) – presents the exact type of situation which Rule 26 seeks to prevent. *Fielden*, 482 F.3d at 871.

## CONCLUSION

Mr. Stokar's testimony will not aid the jury in understanding the evidence or determining any fact at issue. Rather, its sole purpose is to instruct the jury, and the Court, how to rule in this case. Based on the foregoing, the Defendants respectfully request that the Court exclude Mr. Stokar's opinions in their entirety and prohibit him from testifying at trial.

    Respectfully submitted,

/s/ Mark D. Guilfoyle
Mark D. Guilfoyle (KBA #27625)
Nicholas C. Birkenhauer (KBA #91901)
DRESSMAN BENZINGER LAVELLE PSC
109 East Fourth Street
Covington, Kentucky 41011
(859) 341-1881
*Counsel for Defendants*

8

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served this 11th day of October, 2024, via the Court's electronic filing system, upon the following:

Christopher Wiest
CHRIS WIEST, ATTY AT LAW, PLLC
25 Town Center Blvd., Suite 104
Crestview Hills, KY  41017
chris@cwiestlaw.com

Thomas B. Bruns, Esq.
BRUNS, CONNELL, VOLLMER, ARMSTRONG
4555 Lake Forrest Drive, Suite 330
Cincinnati, Ohio 45242
tbruns@bcvalaw.com

                                                /s/ Mark D. Guilfoyle
                                                Mark D. Guilfoyle