**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

DR. AMY DICHIARA               :
                                   :
      Plaintiff,             :     Case No. 2:22-cv-00111-DLB
                                   :
v.                           :     Judge David L. Bunning
                                   :
SUMMIT MEDICAL GROUP, INC., et al.  :
                                   :
      Defendants.          :

## PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT (Doc. 53) – *ORAL ARGUMENT REQUESTED*

Many of the flaws in the factual and legal arguments raised in Defendants' Opposition (Doc. 57) were addressed in Dr. DiChiara's own Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition"). (Doc. 58). For that reason, Plaintiff reincorporates her Opposition herein. *Oral argument is requested pursuant to L.R. 7.1(f).*

Nothing in Defendants' Opposition changes the fact that Defendants admitted, under oath, the material facts establishing the elements of Plaintiff's claims. Perhaps in recognition of that fact, Defendants' Opposition cites to certain evidentiary materials that do not support the conclusions they hope the Court will draw from them, while entirely ignoring the evidentiary materials (their own under oath admissions and the contents of their attorney vetted termination letter) contradicting their proffered conclusions. In other words, Defendants' Opposition fails to create a genuine issue of material fact for trial. That conclusion is further reinforced by the fact Defendants continue to misrepresent the relevant law, including the law that provides anti-retaliation protection to an employee who participates "in any manner" in protected activity.

**I.     Reply to Defendants' "Counterstatement of Facts"**

1

Defendants begin by citing to Dr. DiChiara's direct communications with them (Doc. 57 at p. 4) – while entirely ignoring the fact that one of the reasons they terminated her employment was because she provided emails to an attorney who then used those emails to sue Defendants for violations of Title VII and the ADA.  (Doc. 50-44, "Your unauthorized disclosure of the subject emails to a law office which already had sued SEP and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits…).

Continuing in that vein, Defendants state that the *Beckerich I* lawsuit never mentioned Title VII or ADA claims, and then claim that Dr. DiChiara "could not have possibly participated in *Beckerich II* on August 31. *Beckerich II* literally did not exist until September 3." (Doc. 57 at p. 4).  What Defendants entirely ignore is that on and before August 31 Dr. DiChiara was told by Mr. Deters he was going to bring such claims, and in fact he did so three days later in *Beckerich II*.  (Depo. DiChiara, Doc. 50, at 100, 102).

Next, Defendants argue that because no Title VII or ADA claims actually were pending when Dr. DiChiara undisputedly provided documents in furtherance of such claims, and the lawsuit raising those claims was filed a mere three days later, then she was not engaged in protected activity as a matter of law.  As demonstrated below, Defendants are wrong as a matter of law.  In a like manner, Defendants argue that the documents provided by Dr. DiChiara did not mention Title VII or ADA, while entirely ignoring the undisputed fact that those documents, which contained evidence of Defendants' false assertions in support of their vaccine mandate and which provided evidence of the lack of any undue burden in granting religious accommodations, were used in support of such claims, thus constituting participation "in any manner."

Defendants then cite to Dr. DiChiara's letter of August 31, 2021, and falsely claim that it had to specifically reference Title VII or ADA – but again, the law is otherwise – retaliation is prohibited against "any manner" of employee participation.  And finally, as for Defendants' lack of notice arguments, Defendants, yet again, ignore their own testimonial admissions about their knowledge of her protected activities in relation to her providing documents in furtherance of the *Beckerich II* suit, and which Defendants admit **was a basis** of their termination of her employment.  (Depo. Prichard, Doc. 45, at 262-265, 277-281, 287, 294).

**II.     Reply to Defendants' Legal Argument**

    **A.   Plaintiff is entitled to partial summary judgment on her Title VII/ADA retaliation claim**

        1.   <u>As a matter of law: Dr. DiChiara engaged in "participation" protected activity despite there being no pending EEOC charge because a lawsuit is a proceeding; Dr. DiChiara participated in the proceeding by giving documents in support of Title VII/ADA claims; Dr. DiChiara also engaged in protected "opposition" activity, and her actions were reasonable</u>

Once again, Defendants falsely argue that as a matter of law, an EEOC charge had to be pending for Dr. DiChiara to be participating in a proceeding raising Title VII/ADA claims. (Doc. 57 at 12-14).  As demonstrated in Dr. DiChiara's Opposition to Defendants' Motion, Defendants are wrong.  (Doc. 58 at pp. 2-9).

Defendants then falsely argue that Dr. DiChiara was not "participating" in a Title VII or ADA proceeding at the time she provided documents to Mr. Deters, because no Title VII/ADA claims were pending in *Beckerich I,* and *Beckerich II* had not yet been filed.  (Doc. 57 at 14-17). Defendants entirely ignore the fact that *Beckerich II,* which did contain such claims, unquestionably was in the process of being prepared and filed when she provided the documents used as attachments to that suit. (Depo. DiChiara, Doc. 50, at 100, 102).

With respect to the participation clause, the Sixth Circuit recognizes that the clause's **"exceptionally broad protections** . . . extend[] to persons who **have participated in *any* manner** in Title VII proceedings." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). (emphasis added).  Defendants falsely suggest that the broad language of "in any manner" in the anti-retaliation statutes does not extend to all actions reasonably involved in bringing about the Title VII lawsuit itself – or by implication an EEOC charge.  Of course, accepting such an argument leads to absurd results.  If an employer knows an employee is participating in the preparation of a Title VII lawsuit or EEOC charge against it, and it terminate employment as a result of that participation (as Defendants admit to doing here), they do not incur liability as long as they do not fire the employee for the action of filing the lawsuit or charge itself.

And, accepting Defendants' contravened-by-the text construction would severely undermine Congress' primary objective in enacting the anti-retaliation provisions, which "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees [of freedom from discrimination]." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 61 (2006).  In other words, limiting protection to actions taken after filing a lawsuit or a charge, while failing to protect activities necessarily taken to bring such a lawsuit or charge into existence "would fail to fully achieve the antiretaliation provision's 'primary purpose,' which is '[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id.*

In another attempt at statutory rewriting, Defendants falsely contend that because Dr. DiChiara only "generally assisted" with the *Beckerich II* lawsuit filing (a filing that included Title VII/ADA claims among its "23 claims" and which cited as support the emails Dr. DiChiara provided), she did not "participate in or assist with Title VII/ADA claims".  (Doc. 57 at 16).

4

Once again, Defendants' position is not found anywhere in the statute as the broad anti-retaliation provisions protect participation "in any manner" – not just "full participation from start to finish" as Defendants now rewrite the statute to read.

Defendants then cherry pick certain self-serving testimony from Dr. Prichard about Dr. DiChiara's participation in *Beckerich II* (at pages 279-280 of his deposition), but dishonestly leave out his immediate subsequent admissions that this prior testimony (cited by Defendants) was without any basis.[1]  Leaving no doubt, Dr. Pritchard admitted that Dr. DiChiara was participating in the Title VII and ADA *Beckerich II* lawsuit:

---

[1] **Q.  You would agree with me that the Deters firm attached those documents to its lawsuit that brought ADA and Title VII claims?**

A.  Within my opinion, which may not mean a thing, it had no merit.

**Q.  Okay.  Well, the merit -- I understand your position is that the Deters firm's lawsuit had no merit, okay, but that wasn't my question.  My question was:  They brought Title VII and ADA claims, correct?  Right?**

A.  Some associates did -- not Amy.  Some associates did.

**Q.  No, I understand.  I wasn't referring to associates.  I'm referring to the Deters firm itself bringing the lawsuit –**

A.  Yes.  (Depo. Prichard, Doc. 45, at 279).
…

**Q.  Where in Dr. DiChiara's Exhibit 40 letter does she say that the e-mails were not provided in furtherance of the lawsuit or the Title VII or ADA claims?**

A.  Well, I'd still go to the second paragraph and say, first, please know that I did not authorize Deters Law to publicize those e-mails or any other documents that I had authored regarding the vaccines and on the vaccine mandate issued by St. Elizabeth Healthcare.  I certainly do not approve of the use for exhibits and so forth.

**Q.  Okay.  But she doesn't say that they weren't authorized to be used in furtherance of lawsuits. She says they weren't authorized to be publicized or used as exhibits, right?**

A.  That's what she states.

**Q.  That's what she says.  And you said before that her letter, Dr. Prichard, said that she wasn't using them in furtherance of the lawsuit at all.  Not just those exhibits, not just publicizing them, I'm asking is that anywhere in this letter?**

A.  No.  (*Id.* at 280-281).

**Q.   Okay.  Would you agree or did you think Dr. DiChiara was assisting Mr. Deters in bringing the lawsuit?**

A.   I sure think she was assisting him, yes.

**Q. Do you think she participated in any manner [in the lawsuit] by providing him the e-mails in the lawsuit?**

A.   Yes.  And I'll say either knowingly or unknowingly.  But I think, you know, when you know somebody that brought a firm against your employer and you start sharing personal e-mails, that really calls in the loyalty aspect of the employment.  (Depo. Prichard, Doc. 45, at 287).

Dr. Prichard also admitted that the emails Dr. DiChiara provided were relevant to the claims in

the *Beckerich II* lawsuit (and in fact the termination letter asserted as much):

**Q.   And you acknowledge that the e-mails related to the subject matter of the lawsuits, correct?**

A.   Yes, that's what we wrote.  (*Id.* at 294).[2]

And, Dr. Pritchard admitted that vaccine efficacy had a bearing on exemption issues under Title

VII and the ADA:

**Q.   Let me ask:  If data had come out -- because we talked about data developing -- that the existing vaccines were either unsafe -- well, if they're unsafe and they're injuring your workforce, that's going to impact your ability to provide patient care, correct?**

A.   Absolutely.

**Q.   And similarly, if data comes out that the vaccines are ineffective, that they don't work, that's going to also have a bearing on this mandate and the exemption process, right?**

A.   Exactly, yes.  (*Id.* at 133).

---

[2] In fact, Dr. Prichard admitted 1) that he never asked Dr. DiChiara why she provided documents to the Deters firm (*id.* at 211), 2) that Dr. DiChiara never indicated she was not receiving legal advice (*id.* at 214), and 3) he knew that Mr. Deters was acting on behalf of the Deters law firm and its attorneys to gather information in support of the claims in the *Beckerich* suits (*id.* at 262-263).  Dr. Pritchard also testified that it was "not a huge assumption" that the attorneys attached those documents to the lawsuit to further the Title VII and ADA claims.  *Id.* at 290.

6

Turning to Defendants' next argument, they suggest that "opposition" clause claims only exist where a complaint is made directly to the employer (as opposed to an attorney who then files suit against the employer). (Doc. 57 at pp. 18-19). Defendants also argue that the forwarding of emails is not "reasonable". (*Id.* at 19-20). Plaintiff addressed these contentions at length in her Opposition, including why they are incorrect as a matter of law as they run contrary to the precedent in *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 277-278 (2009). (Doc. 58 at pp. 9-12). Plaintiff reincorporates that Opposition here.

2.  <u>SEP admitted under oath it was aware of her protected activity when it terminated her employment because of that activity</u>

Next, Defendants falsely argue that they were never on notice of Dr. DiChiara's protected activity. (Doc. 57 at pp. 21-22). Initially, Defendants suggest that Dr. DiChiara had to make explicit allegations and invoke the magic language of "Title VII" and "ADA" in her direct communications with them, as opposed to the fact they specifically cited her actions of providing documents to a lawyer suing them for such claims as a basis of terminating her employment. (Doc. 50-44, "Your unauthorized disclosure of the subject emails to a law office which already had sued SEP and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits,…).

Not surprisingly, the law does not require magic language. *Tennant v. District of Columbia*, 2020 U.S. Dist. LEXIS 137502 at *22 (DCD 2020) (observing that Defendants may be right that employee did not use the "magic words" of "Title VII" in retaliation claim, "but nothing in Title VII required her to do so"); *Newell v. Heritage Senior Living, LLC*, 2016 U.S. Dist. LEXIS 13416, 2016 WL 427371, at *7 (E.D. Pa. Feb. 3, 2016), aff'd, 673 F. App'x 227 (3d Cir. 2016) (rejecting "magic words" theory); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (same). What is required is only that "the employer knew of the

7

exercise of the protected right." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

Here, Defendants admit they had notice of the protected activity – they knew that documents were provided in furtherance of, and in fact attached to, a Title VII and ADA lawsuit that raised allegations about improper handling of exemptions to their vaccine mandate. These undisputed facts were addressed at length, with citation to Defendants' under-oath admissions, in Plaintiff's Opposition, and it is reincorporated here. (Doc. 58 at pp. 12-15).

Ignoring their own attorney vetted termination letter and their own testimonial admissions, Defendants spuriously claim that "SEP knew only about Dr. DiChiara's direct communications with SEP." (Doc. 57 at p. 21). Defendants then contradict this false assertion by falsely claiming that Plaintiff's "only real notice argument derives from a September 20th email from Dr. DiChiara's counsel". (Doc. 57 at p. 22). Even if the above were true, Defendants' Opposition engages in a rewrite of counsel's email, because the email unquestionably put Defendants on notice that if they decided to take "punitive action" against Dr. DiChiara for providing emails to an attorney and consulting with that attorney concerning her rights, then that punitive action would be "a prima facie case of Title VII retaliation." (Doc. 44-53). And of course, Defendants did exactly that and admitted it in their termination letter. (Doc. 50-44, "Your unauthorized disclosure of the subject emails to a law office which already had sued SEP and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits…").

### 3. Defendants admitted causation, but attempt to deny it anyway

Defendants' next spurious argument is a lack of causation. Plaintiff refuted that baseless argument in her Opposition, and reincorporates it here by reference. (Doc. 58 at pp. 15-22). Simply put, Defendants' termination letter is unequivocal on this issue. (Doc. 50-44). And

leaving no doubt, Defendants doubled down during discovery and admitted that Dr. DiChiara's participation – her providing to a law firm documents relevant to the Title VII/ADA claims in the case – was a basis of her termination.  (Depo. Prichard, Doc. 45, at 287, 294).  Of course, Defendants' Opposition ignores this dispositive evidence.  For the same reasons, Defendants' suggestion, that Dr. DiChiara's "apology" letter in early September had to explicitly indicate that she was participating and assisting the Deters firm in bringing Title VII and ADA claims, is an equally frivolous argument as it fails to change the legal effect of Defendants' admissions.  *(Doc. 58 at 23).*

4. <u>SEH is liable for the retaliation claims, under the joint employment, significantly effect, and integrated enterprise/single employer doctrines</u>

Defendants argue that SEH is not an employer under either the joint employment doctrine, the significant effect doctrine, or the integrated enterprise/single employer doctrine. Plaintiff's Opposition thoroughly demonstrates why Defendants' arguments fall short, and Plaintiff reincorporates it by reference.  (Doc. 58 at pp. 22-26).

Regarding joint employment, although Defendants admit that the SEH CEO (Colvin) had the power to fire the SEP CEO (Pritchard) (Doc. 58 at P. 29, fn. 20), they falsely argue that "only SEP had the ability to hire, compensate, direct, supervise, and terminate" Plaintiff's employment. (Doc. 57 at p.24).  And, Defendants claim the 4 weeks of consultation between Mr. Colvin and Dr. Pritchard regarding terminating Plaintiff's employment was nothing more than giving Mr. Colvin "a 'heads up,'" and that Mr. Colvin's testimony is that he simply didn't "object" to Dr. Pritchard's decision.  (Doc. 57 at p. 30).  Of course, this begs the question why a mere "heads up" took 4 weeks of consultation.  Regardless, it proves Plaintiff's assertion here because an executive who doesn't object obviously had the right to do so, as the undisputed proof here demonstrates.

Regardless, Defendants' false assertion is further contradicted by Defendants' admissions that: (i) SEP's sole member and owner is SEH [Depo. Bast, Doc.46, at 11-12, Exhibit 67, Doc. 44-67, at Article III, Section 1]; (ii) SEH maintained reserve powers in the SEP bylaws to permit the SEH Board of Trustees to take action **over any issue** affecting SEP [Id. at 13, Exhibit 67 at Article III, Section 2]; (iii) the SEH CEO (Colvin) sits on the Board of SEP, along with two other of his appointees, to maintain SEH's control of its subsidiary [Id. at Exhibit 67 at Article IV, Section 2, C.]; (iv) the SEH CEO (Colvin) maintains control and direction over SEP through reserve powers to direct and control the SEP CEO's employment, with the ability to direct, control, hire, or terminate the employment of the SEP CEO, which in turn allowed Colvin to direct SEP [Id. at 15, Exhibit 67 at Article V, Section 5.A.vi; Depo. Prichard, Doc. 45, at 81]; and (vi) SEP executives, to include the SEP CEO, CFO, COO, and Vice President of Transformation, all of them, actually are employed by SEH, ensuring SEH control over SEP [Depo. Bast, Doc. 46, at 32-33, 35].  In sum, this undisputed evidence fulfills Plaintiff's burden to demonstrate the ability of SEH to control SEP. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991); *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (*quoting Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)).

Next, Defendants claim that the "significantly effect" doctrine under *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870 (6th Cir. 1991) is not met.  (Doc. 57 at p. 24).  In support, Defendants claim there was no action that SEH took against Plaintiff, even though an SEH employee (Prichard) fired her after 4 weeks of consultation with the SEH CEO (Colvin). [Depo. Prichard, Doc. 45, at 80-81, 216-218, 253-254, 306; Depo. Colvin, Doc. 47, at 119].  This record is on par with the requirements of *Christopher*.

Finally, Defendants (Doc. 57 at p. 24) argue that integrated enterprise/single employer test is not met. *See, e.g., York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982). Plaintiff addressed this issue at length in her Opposition, and those arguments are reincorporated by reference here.  (Doc. 57 at pp. 22-26).

As demonstrated above, here, there were common management and directors, and: common ownership and financial control between SEH and SEP.  Defendants suggest that *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566 (6th Cir. 1984), and its discussion of sham corporations apply – but that case involved a completely "separate managerial board." *Id.* at 573.  Here, the fact that the critical SEP managerial officers are employed by SEH, along with an unlimited right by SEH to do anything it wishes by way of an SEH board resolution directed to SEP, proves the allegedly separate corporate relationship is a sham.

And these same "ultimate control" factors, as well as those set forth in Plaintiff's Opposition (Doc. 58 at pp. 22-26), demonstrate centralized control of labor relations and personnel.  Finally, in terms of interrelation of operations, including common offices and equipment, SEH owns the hospital properties and facilities where many SEP physicians, including Dr. DiChiara, showed up to work, a work location where those same physicians gave orders to SEH nurses, and where those physicians treated SEH patients. [Depo. Bast, Doc. 46 at 17-19, 21-22].  The integrated enterpriser/single employer test is met.

### B.  Plaintiff is entitled to partial summary judgment on her KCRA claim

Plaintiff's Opposition demonstrated why Defendants' arguments fall short (arguments Defendants do not refute), and Plaintiff reincorporates them by reference.  (Doc. 58 at pp. 26-28).  Defendants begin with the false argument that because the KCRA was not specifically mentioned in *Beckerich,* no claim was presented.  Yet, the law on sufficiency of stating a claim requires a review of the factual allegations, namely the facts concerning religious and disability

11

discrimination, not the labels attached to those factual allegations. *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 697 (6th Cir. 1996)(*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* 2 James Wm. Moore et al., Moore's Federal Practice § 8.04[3](3d ed. 2006)("Rule 8(a)(2) does not require a claimant to set forth any legal theory justifying the relief sought on the facts alleged, but does require sufficient factual averments to show that the claimant may be entitled to some relief."). Moreover, the analysis of KCRA and federal discrimination claims are identical. *Mills v. Gibson Greetings*, 872 F. Supp. 366, 1994 U.S. Dist. LEXIS 19291 (E.D. Ky. 1994). And the *Beckerich II* complaint contained those required factual allegations. (Doc. 50-35).

Finally, the anti-retaliation provisions extend to individuals such as Mr. Colvin and Dr. Prichard. *Cowing v. Commare*, 499 S.W.3d 291 (Ky. App. 2016); *Myers v. Red Classic Transit*, 2019 U.S. Dist. LEXIS 202845 at *17 (EDKY 2019); *Cobble v. Yamamoto FB Engineering, Inc.*, 2017 U.S. Dist. LEXIS 2561, 2017 WL 88992 (W.D. Ky. Jan. 9, 2017). Moreover, KRS 344.280 expressly forbids retaliation by "a person," thus plainly permitting the imposition of liability on individuals, to include Mr. Colvin and Dr. Pritchard here. *Id.* (*citing Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000)).

### C.  Plaintiff is entitled to partial summary judgment on her discharge against public policy claim

Plaintiff's Opposition addressed the discharge against public policy claim and Plaintiff reincorporates that here. (Doc. 58 at pp. 28-34). As a matter of undisputed fact, the discharge here was, in part, due to Plaintiff's exercise of a right conferred by a well-established legislative enactment. *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985); *Keysor v. Commonwealth*, 486 S.W.3d 273, 280 (Ky. 2016).

As for the employment-related nexus test, it is satisfied where there is a "right to [engage in the act in question in the context of] a private workplace." *Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 655-656 (Ky. 2019).  Here, assertion of the attorney-client privilege is a statutory right that applies in the employment and private workplace context, and Defendants cannot honestly contend otherwise.  Plainly, the privilege extends everywhere, including by providing "protection to the worker in his employment situation." *Grzyb*, 700 S.W.2d at 400.

### D.  Plaintiff is entitled to partial summary judgment on her breach of contract claim

Plaintiff reincorporates by reference her Opposition related to this issue.  (Doc. 58 at pp. 34-36).  Dr. Prichard admitted that engaging in activity protected by Title VII and the ADA did not violate SEP policy or the employment Agreement.  (Depo. Prichard, Doc. 45 at 41-42, 52-53, 56-57, 223-224, 228, 274-286).  This testimony was consistent with the clause in the employment Agreement that incorporated compliance with legal requirements.  (Doc. 44-4 at ¶12).  Regardless, any ambiguities or contradictions are strictly construed against the drafter, here, SEP.  (Depo. Prichard, Doc. 45, at 30-31). *Theatre Realty Co. v. P.H. Meyer Co.*, 243 Ky. 346, 48 S.W.2d 1, 2 (Ky. 1932); *B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 966 (Ky. 1951); *Majestic Oaks Homeowners Ass'n, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 441 (Ky. 2017).

Defendants argue that the meaning of the 10.2(q) provision, regarding the duty of loyalty, somehow is limited to Dr. Prichard's subjective state of mind – but that is not what the provision says, as it plainly requires a "determination" made in "good faith."  (Doc. 44-4).  And, to the extent that Defendants argue they could terminate the employment Agreement under the "sole determination" clause in 10.2(m) (even if no valid grounds in fact existed), Kentucky courts impute an implied duty of good faith and fair dealing in the performance of any contract, and especially with respect to such a clause. *RAM Engineering & Construction, Inc. v. Univ. of*

*Lousiville*, 127 S.W.3d 579, 584 (Ky. 2003); *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).  Regardless, this provision is ambiguous, requiring construction in favor of Plaintiff's interpretation and not Defendants. *Theatre Realty Co.*, 243 Ky. 346, 48 S.W.2d 1, 2.  Doing so places the "sole determination" language as modifying that portion of 10.2(m) in relation to whether to apply SEP or SEH policies, but not to whether a policy is violated in the first instance.

Finally, Defendants argue a violation of 10.2(n) regarding unprofessionalism.  Dr. Prichard testified that unprofessional meant a violation of the Kentucky Medical Board rules. (Depo. Prichard, Doc. 45 at 52).  But Defendants cite to no evidence (nor can they) suggesting such a violation.  Dr. DiChiara is entitled to partial summary judgment on this claim as well.

### E.  Plaintiff is entitled to partial summary judgment on her tortious interference claims

Defendants raise two arguments, both of which are addressed in Plaintiff's Opposition which is reincorporated by reference. (Doc. 58 at pp. 36-39).  Defendants claim there was no breach of contract (we demonstrate the opposite above and in Plaintiff's Opposition).  And they dispute the significance of the testimony.  Mr. Colvin's testimony on that score is that he "could have said … I'm in agreement, would have been the only thing in addition." (Depo. Colvin, Doc. 46, at 119). And Dr. Prichard's testimony was that he and Mr. Colvin actively discussed the termination of Dr. DiChiara over a course of *four weeks* (Depo. Prichard, Doc. 45 at 216-218). Mr. Colvin was no bystander.

Defendants claim that there was no wrongful conduct.  "Wrongful means is 'defined to include acts which are wrongful in and of themselves, such as misrepresentations of facts, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law.'" *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 572(Ky. 2019).

14

Here, that includes Defendants' retaliation against Dr. DiChiara for engaging in protected conduct under Title VII, the ADA, and Chapter 344, and it includes Defendants' wrongful demand to require Dr. DiChiara to waive the attorney-client privilege as a condition for her continued employment. Dr. DiChiara is entitled to partial summary judgment on this claim.

### F. Plaintiff is entitled to partial summary judgment on her declaratory judgment claim

Defendants assert that this claim is moot. Plaintiff's Opposition addresses this in full. (Opposition, Doc. 58 at pp. 39-40). Plaintiff reincorporates that briefing by reference.

### III.   CONCLUSION

Plaintiff is entitled to partial summary judgment on her claims. Defendants admit they knew Dr. DiChiara gave documents to a law firm that brought protected claims, which documents related to central issues in those claims. Defendants then demanded that Plaintiff waive her attorney-client privilege with respect to those documents. Defendants were warned they would be sued for the very claims that were brought if they took punitive action against Dr. DiChiara. Despite this notice, Defendants then fired Dr. DiChiara for participating and assisting in the protected conduct, and likely did so against the advice of their legal counsel.

Respectfully submitted,

/s/ Christopher Wiest                            /s/Thomas Bruns
Christopher Wiest (KBA 90725)         Thomas Bruns (KBA 84985)
Chris Wiest, Atty at Law, PLLC          Bruns Connell Vollmar & Armstrong LLC
50 E. Rivercenter Blvd, Ste. 1280        4555 Lake Forest Drive, Ste. 330
Covington, KY 41011                       Cincinnati, OH 45242
513/257-1895 (c)                           513/312-9890 (v)
chris@cwiestlaw.com                     tbruns@bcvalaw.com
**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by filing same via CM/ECF, this 18 day of October, 2024.

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)