**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 22-111-DLB-EBA**

**DR. AMY DICHIARA**                                                                                    **PLAINTIFF**


**v.**                                    **MEMORANDUM OPINION AND ORDER**


**SUMMIT MEDICAL GROUP, INC., et al.**                                    **DEFENDANTS**

*******************

## I.    INTRODUCTION

This matter is before the Court upon Cross–Motions for Summary Judgment. Summit Medical Group, Inc. ("SEP"), Saint Elizabeth Medical Center, Inc. d/b/a Saint Elizabeth Healthcare ("Saint Elizabeth"), Dr. Robert Prichard ("Prichard"), and Garren Colvin ("Colvin") (collectively "Defendants") have filed a Motion for Summary Judgment (Doc. # 52), which has been fully briefed.  (Docs. # 58 and 65).  Dr. Amy Dichiara ("Plaintiff") has filed a Motion for Summary Judgment (Doc. # 53), which has been fully briefed.  (Docs. # 57 and 66).  In addition, Defendants have filed two related motions. First, Defendant has filed a Motion to Exclude (Doc. # 51), which has been fully briefed. (Docs. # 56 and 63).  Second, Defendants have filed a Motion to Strike (Doc. # 59), which has been fully briefed.  (Doc. # 60 and 64).

On March 7, 2025, the Court heard oral argument on these motions and took them under submission.  (Doc. # 70).  For the following reasons, Defendants' Motion for Summary Judgment (Doc. # 52) is **granted**; Plaintiffs' Motion for Partial Summary

1

Judgment (Doc. # 53) is **denied**; and Defendants' Motion to Exclude (Doc. # 51) and Motion to Strike (Doc. # 59) are **denied as moot**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Saint Elizabeth is a Kentucky corporation that operates a number of hospitals throughout Kentucky.  (Docs. # 31 ¶ 4 and 8 ¶ 4).  SEP is a wholly owned subsidiary of Saint Elizabeth  with its principal office in Erlanger, Kentucky.  (Docs. # 31 ¶ 2 and 8 ¶ 2).  SEP employs physicians who provide services at Saint Elizabeth's medical facilities. (Docs # 31 ¶ 2, 8 ¶ 2, and 57 at 33).  Prichard was SEP's CEO during the summer and fall of 2021.  (Docs. # 31 ¶ 6 and 8 ¶ 6).  Colvin is the current CEO and president of Saint Elizabeth.  (Docs.  # 31 ¶ 7 and 8 ¶ 7).  Colvin and Prichard filled their respective roles at the times that these events took place.  (Docs.  # 31 ¶¶ 6–7 and 8 ¶¶ 6–7).  Plaintiff is a licensed physician who specializes in gastroenterology.  (Doc. # 31 ¶ 1).

Plaintiff began working as a physician for SEP in 2013.  (Doc. # 53 at 2).  The terms of Plaintiff's employment with SEP were governed by an employment agreement (the "Employment Agreement").  (Doc. # 50–1).  Plaintiff worked for SEP until her employment was terminated on October 4, 2021.  (Docs. # 53 at 2 and 52–1 at 7).

This dispute arises out of a COVID-19 vaccination policy which was adopted by SEP and Saint Elizabeth and was announced on August 5, 2021.  (Docs. # 53 at 3 and 52-1 at 3).  The policy required that all employees of SEP be vaccinated against COVID-19 on or before October 1, 2021.  (Docs. # 53 at 3 and 52-1 at 3).  The policy allowed employees to seek a medical or religious exemption from the vaccination requirement. (Docs. # 53 at 3 and 52-1 at 3).

Shortly after the vaccination policy was announced, a representative of a local law firm, Eric Deters ("Deters"), began to communicate with the public, via social media and email, about legal issues and objections surrounding Saint Elizabeth and SEP's vaccination policy. (Doc. # 53 at 3). At this time, Deters was not a licensed attorney, and was merely acting as a representative of the Deters Law Firm. (*Id.*). On August 7, 2021, Plaintiff emailed Deters asking to be "[kept] in on what [he was] planning" regarding the vaccination policy. (Doc. # 50-4). In that email, Plaintiff also informed Deters that she planned to meet with Prichard and Colvin to discuss her "medical, scientific reasons" for objecting to the vaccination policy, in hopes that she could convince them not to adopt it. (*Id.*). Plaintiff told Deters that she also intended to seek a religious exemption from the vaccination policy at a later date. (*Id.*). Plaintiff expressed concern that her meeting with Prichard and Colvin could jeopardize her desired religious exemption, and asked Deters if he approved of her plan. (*Id.*).

On August 9, 2021, Plaintiff contacted Colvin and Prichard requesting a meeting to discuss the vaccination policy. (Doc. # 52-1 at 4). The meeting was scheduled for August 16, 2021. (Docs. # 52-1 at 4 and 53 at 4). At the meeting, Plaintiff highlighted her medical and scientific reasons for objecting to the vaccination policy; she did not mention that she had religious, moral, or medical objections to the policy. (Docs. # 52-1 at 4 and 53 at 4). Following the meeting, Plaintiff, Colvin, and Prichard exchanged emails, and Prichard told Plaintiff that the vaccination policy would remain in place. (Docs # 52-1 at 5 and 53 at 6). Plaintiff forwarded these emails to Deters. (Docs. # 52-1 at 5, 53 at 7, and 50-23). The emails and documents forwarded to Deters consisted of a study on the COVID-19 vaccine's efficacy and safety, as well as communications between Plaintiff,

Colvin, and Prichard, where Plaintiff voiced concerns about the vaccination policy and Prichard notified Plaintiff that the policy would remain in place. (*See* Doc. # 44-36 at 99–136).

On August 23, 2021, the Deters Law Firm filed a lawsuit, on behalf of SEP and Saint Elizabeth employees, against SEP and Saint Elizabeth to contest their vaccination policy. (Doc. # 52-1 at 5); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 2:21-cv-100-DLB-EBA (E.D. Ky.) (hereinafter *Beckerich I*). Plaintiff was not a party to *Beckerich I*. On August 30, 2021, *Beckerich I* was voluntarily dismissed. (Doc. # 52-1 at 5 n. 3).

On September 3, 2021, the Deters Law Firm filed a second lawsuit relating to the vaccination policy. (Docs. # 52-1 at 5 and 53 at 8); *Beckerich v. St. Elizabeth Med. Ctr.* No. 21-cv-105-DLB–EBA (E.D. Ky.) (hereinafter *Beckerich II*). Unbeknownst to Plaintiff, Deters attached the emails between herself, Prichard, and Colvin, as an exhibit to the *Beckerich II* complaint.[1]  (Docs. # 52-1 at 5 and 53 at 8).

On September 5, 2021, Plaintiff emailed Prichard and Colvin, apologizing for the use of her emails in the *Beckerich II* complaint. (Docs. # 52-1 at 6 and 53 at 8). In her email Plaintiff stated that she was "shocked and angered" to learn that her emails had been attached to the complaint, and that she had intended to share those emails in confidence. (Doc. # 50-36). In response, Prichard requested that Plaintiff send him unredacted copies of the emails that she had exchanged with Deters. (Docs. # 52-1 at 6 and 53 at 8). Plaintiff, through her current counsel, refused to disclose those emails

---

[1]    Plaintiff also drafted her own report highlighting her scientific concerns with the COVID-19 vaccine. That report was also attached to the *Beckerich II* complaint as Exhibit 2. *Beckerich II*, No. 21-cv-105-DLB-EBA, Doc. # 1-5. This document was not sent to Deters by Plaintiff. (Doc. # 53 at 7). The documents that Plaintiff did forward to Deters were attached as Exhibit 3. *See Beckerich II*, No. 21-cv-105-DLB-EBA, Doc. # 1-6.

asserting that they were protected by attorney-client privilege.  (Docs. # 52-1 at 6 and 53 at 9).

On September 17, 2021, Plaintiff requested an exemption on religious grounds from the vaccination policy.  (Docs. # 52-1 at 6 and 53 at 8).  Plaintiff's request was granted on September 20, 2021.  (Docs # 52-1 at 7 and 53 at 8).

On October 4, 2021, Plaintiff met with Prichard.  (Doc. # 52-1 at 7).   Prichard informed her that she was being terminated.  (Doc. # 52-1 at 7 and 53 at 9).  At that meeting Prichard delivered a termination letter, signed by himself, which stated that Plaintiff was being let go because she violated numerous SEP policies, and because she had not fully disclosed the contents of her communications with Deters.  (Docs. # 52-1 at 7, 53 at 9, and 50-44).  Specifically, the letter alleged that Plaintiff's conduct supported her termination for cause under Sections 10.2(h), (m), (n), and (q), of the Employment Agreement.  (Doc. # 50-44).

Plaintiff initiated this action on August 29, 2022.  (Doc. # 1).  With leave of the Court, Plaintiff filed her First Amended Complaint on October 11, 2023.  (Doc. # 31).  Plaintiff asserted seven causes of action in her First Amended Complaint, only six of which are left unresolved.  First, Count I asserts that Plaintiff was fired by SEP and Saint Elizabeth in retaliation for engaging in protected activity.  (Doc. # 31 ¶¶ 65–76).  Plaintiff alleges that the retaliatory termination is in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and of the Americans with Disabilities Act (the "ADA").  (*Id.*).  Plaintiff's federal law retaliation claim is only asserted against SEP and Saint Elizabeth.  Count II asserts another retaliation claim under the Kentucky Civil Rights Act ("KCRA").  (*Id.* ¶¶ 77–82).  Additionally, Plaintiff asserts a state law claim for the tort of "discharge against

public policy" against all four defendants, a state law claim for breach of contract against SEP, and a state law claim for tortious interference with a contract against Saint Elizabeth and Colvin.  (*Id.* ¶¶ 96–113).[2]    Finally, Plaintiff asks for a declaratory judgment that the non-compete clause of her Employment Agreement with SEP is not enforceable.  (*Id.* ¶¶ 114–18).  Defendants now move for Summary Judgment in their favor on the remaining six Counts.  (*See* Doc. # 52-1).

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, no genuine dispute exists where no reasonable jury could return a verdict for the nonmoving party.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).  The moving party bears the burden of showing the absence of a genuine issue of material fact.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Once the movant has satisfied its burden, the non–moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It must produce evidence showing that a genuine factual issue remains.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact

---

[2]    Count III, failure to accommodate a sincerely held religious belief, was deemed withdrawn in August of 2024.  (Doc. # 43).

finder could not find for the non–moving party, summary judgment should be granted. *Ercegovich*, 154 F.3d at 349.

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Lastly, the Court must draw all reasonable inferences in favor of the non–moving party. *Matsushita*, 475 U.S. at 587.

Additionally, federal courts apply the substantive law of the forum state in diversity actions. *See City of Wyanotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Accordingly, Kentucky substantive law will apply to Plaintiffs' claims for breach of contract, tortious interference, and discharge against public policy.

### B.    Retaliation under Title VII and the ADA

Plaintiff's cause of action for retaliation arises under two federal statutory schemes. The first is the ADA, which among other things states that:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this chapter.

42 U.S.C. § 12203(a). The second is Title VII, which states that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

7

42 U.S.C. § 2000e-3(a). The purpose of the federal bar on retaliation is to protect "employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).

"[P]laintiff may prove unlawful retaliation by presenting direct evidence of such retaliation . . . ." *Abbot v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). "Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbot*, 348 F.3d at 542 (emphasis in original) ("[D]irect evidence proves the existence of a fact without any inferences or presumptions." (quoting *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (alteration in original))).

Plaintiff argues that her termination letter (Doc. # 50-44), and Prichard's deposition testimony, are direct evidence of retaliation. (Doc. # 58 at 16). Specifically, Plaintiff points to the second page of the termination letter, where Prichard notes that Plaintiff had "been less than forthcoming" with SEP during their investigation by refusing to provide unredacted copies of emails she sent to Deters (Doc. # 50-44 at 2), and to Prichard's statement that he knew: (1) Plaintiff's emails related to *Beckerich II*; (2) that she was participating in *Beckerich II*; and (3) that she was helping Deters. (Doc. #58 at 17). This statement is not direct evidence that Plaintiff was fired for participating in a Title VII proceeding or opposing a purportedly unlawful practice. If Prichard's written and deposition statements are to be believed, they demonstrate two motivating factors for Plaintiff's termination: (1) she provided emails to a law firm to help it sue her employer;

8

and (2) that Plaintiff did not fully disclose to her employer the contents of those emails. In and of itself, those are not protected activities, and discharging an employee in response to those activities is not unlawful retaliation, as will be more fully explained below. Therefore, Plaintiff has not produced direct evidence of unlawful retaliation.

In the absence of direct evidence, when evaluating a claim for retaliation under the ADA or Title VII, courts use the "slightly modified" *McDonnell Douglas* burden-shifting framework. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); *compare Kirkland v. City of Maryville, Tenn.*, 54 F.4th 901, 910 (6th Cir. 2022) *with Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schools*, 974 F.3d 652, 661 (6th Cir. 2020). This framework places an initial burden on the Plaintiff to establish a prima facia case of retaliation. "To do so, she must show that (1) she engaged in activity protected by the Acts, (2) the exercise of her civil rights was known to the [employer], (3) the [employer] then took an adverse employment action against her, and (4) there was a causal connection between her protected activity and the adverse action." *Kirkland*, 54 F.4th at 910 (citing *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) and *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018)). "The burden of establishing a *prima facie case* in a retaliation action is not onerous, but one easily met." *Abbott*, 348 F.3d at 542 (italics in original) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Once a prima facia case is established, the burden then shifts to the Defendant to "articulate a legitimate, nonretaliatory reason for the adverse action." *Kirkland*, 54 F.4th at 910. The burden then shifts back to the Plaintiff to "demonstrate that the [Defendants'] proffered justification was pretextual." *Id.* "On a motion for summary judgment, a district

court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Kirilenko-Ison*, 974 F.3d at 661 (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)). "Summary judgment is proper where the plaintiff fails to present evidence sufficient to create a dispute of material fact with respect to an element of his retaliation claim." *Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002) (citing *Allen v. Mich Dep't of Corr.*, 165 F.3d 405, 412 (6th Cir. 1999)).

Plaintiff and Defendants agree that there was adverse employment action when Plaintiff was fired from her job. (Docs. # 52-1 at 8 and 53 at 27). Nevertheless, Defendants argue that Plaintiff failed to meet her burden by demonstrating a genuine issue of material fact on protected activity, notice, and causation. (*See* Doc. # 52-1 at 8–15). Additionally, Defendant argues that Saint Elizabeth should not be subject to a retaliation claim under Title VII or the ADA because Saint Elizabeth was never Plaintiff's employer. (*Id.* at 52-1 at 15–21). Because the Court agrees with the Defendants that Plaintiff has failed to meet her burden with respect to protected activity and notice, the Court need not address causation or Defendants' alternative argument.

### 1. *Protected Activity*

There are two types of activity which are protected from retaliation under Title VII and the ADA; opposition to unlawful practices and participation in ADA or Title VII proceedings. 42 U.S.C. §§ 12203(a) and 2000e-3(a); *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 493, 469 (6th Cir. 2012). This distinction is important because conduct protected by the opposition clause has "less protection" from retaliation than for "participation in enforcement proceedings." *Niswander*, 529 F.3d 714, 720 (6th Cir. 2008)

(quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989)).    Defendants argue that Plaintiff neither opposed an unlawful practice nor participated in an ADA or Title VII proceeding.  (*See* Doc. # 52-1 at 9–12).

### i.    Participation in a Proceeding

The effect of finding that an employee's activity is within the participation clause is that the employee is then safe from being terminated in retaliation for his participation in an ADA or Title VII proceeding.  *Niswander*, 529 F.3d at 720.  Defendants argue that there are two reasons why Plaintiff has failed to establish that she participated in Title VII or ADA proceedings.    First, that the participation clause's protection "is limited to proceedings during and after the filing of an [Equal Employment Opportunity Commission ("EEOC")] charge."  (Doc. # 52-1 at 9).  Because Plaintiff did not file an EEOC charge prior to her firing, she did not participate in  "proceedings" which is protected under Title VII or the ADA.  (*Id.*).  Second, Plaintiff could not have "participated" in any proceeding because: (1) she did not intend to participate in a lawsuit; (2) the documents were not used in relation to *Beckerich II*'s Title VII and ADA claims; and (3) Plaintiff did not reasonably believe that the documents she provided were relevant to *Beckerich II*.  (*See* Doc. # 65 at 2–4).

Setting aside for a moment Defendant's argument regarding the lack of an EEOC charge, viewing all facts in the light most favorable to the Plaintiff, it is clear that Plaintiff's conduct did not rise to the level necessary to trigger participation clause protection. *Niswander* is particularly relevant here, a brief discussion of that case will help illustrate why Plaintiff's conduct did not amount to participation.

In *Niswander*, the plaintiff was an employee that opted to participate in a class action suit against her employer, Cincinnati Insurance Company ("CIC"), for gender discrimination. *Niswander*, 529 F.3d at 717. The plaintiff soon began to feel that CIC was retaliating against her for participating in the class action suit. *Id.* Later, she was asked by the class's attorneys to provide "any documents that relate in any way to the allegations we [the class] have made in the [c]omplaint or [a]mended [c]omplaints or any documents that you have that show that you were treated less favorably (in any way) than a male employee." *Id.* The plaintiff sent documents to the attorneys which she believed were relevant to her potential retaliation claim, but not to the underlying claim for gender discrimination. *Id.* at 721–22. Those documents contained confidential information about CIC's policyholders. *Id.* at 718. When CIC realized what the plaintiff had done, she was fired for violating CIC's privacy and conflict of interest policies, both of which prohibited disclosing confidential client information. *Id.* at 721.

The issue before the Sixth Circuit was whether the plaintiff's conduct was protected under Title VII's participation clause. *Id.* The Sixth Circuit held that the mere fact that the plaintiff was responding to a request for information during an ongoing lawsuit was insufficient to bring her conduct within the scope of Title VII's participation clause. *Id.* Additionally, her conduct did not constitute participation because she did not believe the documents were relevant to the gender discrimination lawsuit. *Id.* at 721–22. The dispositive facts were that the documents were not relevant to the ongoing Title VII litigation, and the plaintiff did not reasonably believe that those documents were relevant to the litigation which was already ongoing. *Id.* at 722. While "an individual's delivery of relevant documents during the discovery process or the giving of testimony at a

deposition" is certainly within the participation clause, to find that the plaintiff's conduct here was protected participation "would provide employees with near-immunity for their actions in connection with antidiscrimination lawsuits, protecting them from disciplinary action even when they knowingly provide irrelevant, confidential information solely to jog their memory regarding instances of alleged retaliation." *Id.*

Another informative case is *Aldrich v. Rural Health Services Consortium, Inc.*, in which an employee forwarded documents to her private email from her work email which she had been instructed to delete. 579 F. App'x 335, 336 (6th Cir. 2014). The documents were relevant to her co-worker's ongoing wrongful termination lawsuit. *Id.* The plaintiff's employer ultimately discovered what she had done, and she was instructed to delete the documents from her personal email address. *Id.* The plaintiff sued for retaliation after she was fired for refusing to delete them. *Id.* This conduct was not protected participation because the plaintiff was not "directly involved in any litigation, or responding to any requests from [attorneys], when she forwarded the emails to her personal account." *Id.* at 337.

Plaintiff's position is that her case is distinguishable from *Niswander*. Plaintiff focuses on the Sixth Circuit's statement in *Niswander* that their analysis would have been different if the documents that Niswander gave to her lawyers "had reasonably supported her claim of gender-based pay discrimination—or if she had reasonably believed that they did." *Niswander*, 529 F.3d at 722. Here, unlike in *Niswander*, Plaintiff argues her claims reasonably supported the Title VII and ADA claims asserted in *Beckerich II*. (Doc. # 58 at 7). The emails were relevant because they demonstrated that Defendants could accommodate the *Beckerich II* plaintiff's sincere religious beliefs or disabilities without

any undue burden.  (*Id.*).  Additionally, Plaintiff argues that she reasonably believed that the documents she provided to Deters were relevant to the ADA and Title VII claims asserted in the *Beckerich II* lawsuit.[3]  (Doc. # 58 at 8).  In support, Plaintiff asserts that Dr. Prichard knew that Plaintiff believed she was assisting with the *Beckerich II* case, citing both Dr. Prichard's deposition and Plaintiff's termination letter.  (*Id.* (citing Doc. # 45)).

For their part, Defendants point out that the materials Plaintiff provided which were attached to the *Beckerich II* complaint were not cited in support of Title VII or ADA claims, rather they were cited in support of the *Beckerich II* plaintiffs' assertion that the COVID-19 vaccine had not been approved.  (Docs. # 71 at 35 and 50-35 at 7–9, 32).  Additionally, Defendants argue that Plaintiff could not have "participated" in the *Beckerich II* lawsuit because she was never a party to *Beckerich II* and never intended to be.   (Doc. # 65 at 1–2).

Despite Plaintiff's argument to the contrary, the Court does not see how forwarding confidential documents to Deters could amount to protected participation in *Beckerich II*.  First, Plaintiff's argument that a person can "participate" in a protected Title VII or ADA lawsuit, without being named as a party, being subject to any discovery requests, or intending to initiate legal action in any way, strains credulity.  In *Niswander* the plaintiff

---

[3]    In support of this contention, Plaintiff cites to a number of places in her own deposition where she states that she believed that the emails she provided to Deters were relevant to the issue of religious or medical exemptions from Saint Elizabeth's and SEP's vaccination requirement.  (Doc. # 58 at 8); (*see e.g.* Doc. # 50 at 46–47) (where Plaintiff stated she knew that "with the medical information provided [to Prichard and Colvin], that the vaccine does not stop the spread of the virus, that there would not be a hardship for them [to grant religious and medical exemptions from Saint Elizabeth's and SEP's vaccination requirement].").

was actively engaged in Title VII proceedings against her employer, and the documents she sent were in response to written discovery requests, yet her conduct still did not rise to the level of protected participation.  529 F.3d at 722.  Here, unlike *Niswander*, Plaintiff was not subject to any discovery requests nor was she a party to either *Beckerich* case. Rather, like *Aldrich*, Plaintiff was not directly involved in any litigation with Defendants, and by her own admission she did not plan to be.  In fact, Plaintiff went further than the plaintiff in *Aldrich*.  Here, Plaintiff actually disclosed the documents to a third party rather than merely send them to her own private email.  Like in *Niswander*, to conclude that Plaintiff's conduct is protected participation in *Beckerich II* "would provide employees with near-immunity for their actions in connection with antidiscrimination lawsuits. . . ." *Niswander*, 529 F.3d at 722.

Additionally, the documents Plaintiff provided to Deters were not relevant to the Title VII or ADA claims asserted in *Beckerich II*.  Plaintiff's post hoc assertion of relevance is contrary to the facts of this case.  By her own admission, Plaintiff did not intend to mention any religious concerns with the COVID-19 vaccine in her conversations with Colvin and Prichard.  (Doc. # 50-4 at 1).  Those conversations were intended to persuade Colvin and Prichard on medical and scientific grounds.   None of the emails forwarded to Deters referenced religious or moral objections to the vaccination policy.

Finally, while there is a plausible argument that Plaintiff could have reasonably believed that the study and her report on the COVID-19 vaccine were relevant to *Beckerich II*'s Title VII and ADA claims, the same cannot be said about the actual communications exchanged between Colvin, Prichard, and herself.  (*See* Doc. # 44-36 at 99–136).  Colvin and Dr. Prichard's internal, private communications with Plaintiff are

simply not relevant to whether religious or medical exemptions from the vaccination requirement would be unduly burdensome on SEP or Saint Elizabeth, and to believe that they are would be unreasonable.

### ii.    Opposition

Defendants argue that the Plaintiff did not "oppose" any purportedly unlawful conduct; at most, Plaintiff disagreed with Defendants' vaccination requirement, which is not protected under Title VII or the ADA.  (Doc. # 52-1 at 10).  Further, Defendants argue that even if it can be said that Plaintiff mounted an opposition, such opposition was not reasonable because the emails did not relate to any ongoing Title VII or ADA claims.  (*Id.*).  Because Plaintiff has failed to meet her burden of showing that she "opposed" purportedly unlawful conduct, Defendants argue that she has failed to make out a prima facie case of retaliation, and summary judgment should be granted in their favor.

"The Supreme Court has held that the term 'oppose' should be interpreted based on its ordinary meaning: '[t]o resist or antagonize . . .' to contend against; to confront; resist; withstand."  *Jackson v. Genesee Cnty. Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).   The opposition clauses in Title VII and the ADA "cover[] conduct such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer— e.g., former employers, unions, and co-workers."  *Niswander*, 529 F.3d at 720–21 (citing *Johnson*, 215 F.3d at 579).  "[T]he only qualification that is placed upon an employee's invocation of protection from retaliation under [the ADA or] Title VII's opposition clause is

that the manner of [the employee's] opposition must be reasonable." *Niswander*, 529 F.3d at 720–21 (quoting *Johnson*, 215 F.3d at 579).

In *Niswander* the Sixth Circuit was also called upon to determine if Niswander's conduct amounted to protected opposition to purportedly unlawful conduct. 529 F.3d at 722. The court recognized that they needed to strike a balance between the "employer's recognized, legitimate need to maintain an orderly workplace and to protect confidential business and client information, and the equally compelling need of employees to be properly safeguarded against retaliatory actions." *Id.* Based on its analysis of prior caselaw, the court identified several factors which were designed to "take into account the employer's 'legitimate and substantial interest in keeping its personnel records and agency documents confidential' and yet protect the employee's alleged 'need for surreptitious copying and dissemination of the documents.'" *Id.* at 726 (quoting *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980)). Given the factual similarity between *Niswander* and the present case, those factors are also relevant here. Therefore, the factors that the Court will use to determine if Plaintiff's delivery of confidential documents to Deters was reasonable are:

> (1) how the documents were obtained, (2) to whom the documents were produced, (3) the content of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct, (4) why the documents were produced, including whether the production was in direct response to a discovery request, (5) the scope of the employer's privacy policy, and (6) the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy."

*Niswander*, 529 F.3d at 726.

Based upon the factors the Sixth Circuit used in *Niswander*, to the extent that Plaintiff engaged in opposition, that opposition was not reasonable. Of the six factors set

17

forth in *Niswander*, only one of them, "how the documents were obtained," weighs in Plaintiff's favor because she was in rightful possession of those emails. The second factor, to whom the documents were produced, is neutral at best, and at worst cuts against Plaintiff. Plaintiff argues that she provided these documents to "an agent/representative of legal counsel," so this factor should weigh in her favor. (Doc. # 58 at 11). While it is true that Deters represented a law firm, Deters was not a lawyer himself. In truth, Deters's law license was suspended by the Kentucky Supreme Court in 2013, and the Kentucky Supreme Court has declined to reinstate him. *Deters v. Kentucky Bar Ass'n.*, 627 S.W.3d 917 (Ky. 2021) (declining Deters's motion for reinstatement). The fact that Plaintiff forwarded confidential documents to a person no longer licensed to practice law counts against Plaintiff on this point.

The remaining *Niswander* factors are either neutral, or favor finding that Plaintiff's conduct was not reasonable. As has already been explained, the information that Plaintiff provided to Deters was not relevant to the ongoing Title VII and ADA litigation. *Supra* § III(B)(1)(i). SEP also has broad confidentiality and privacy policies with respect to communications between associates, and Plaintiff flouted those policies of her own volition, not in response to a discovery request. (*See* Docs. # 50-46 and 50-47). Finally, the email communications between Plaintiff, Colvin, and Prichard could have been preserved without sending them to a third-party. Plaintiff was never asked to delete those emails. All of these considerations necessitate a finding that Plaintiff's opposition was not reasonable.

### 2.    Notice

Even if Plaintiff had proven that she engaged in protected activity, her claim for retaliation would still fail because she has failed to prove that the Defendants had notice of her protected activity.  In order to make a prima facie case of retaliation, the Plaintiff must be able to show that the employer knew that she had engaged in protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).  Plaintiff is not required to produce direct evidence of the Defendant's knowledge or awareness; she just has to provide "sufficient evidence to support the inference that her employer knew of her protected activity. *Id.* at 552 (discussing *Polk v. Yellow Freight System, Inc.*, 876 F.2d 527, 531 (6th Cir. 1989)).  "The governing principle from [Sixth Circuit] caselaw is not that magic words must be intoned but that the language used be enough, in a specific factual context, to convey the accusation and its basis." *Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 825–26, 828–29 (6th Cir. 2019) (plaintiff demonstrated sufficient evidence to support the inference that her employer knew that she had opposed an unlawful practice after plaintiff complained to her manager that she was harassing and discriminating against a co-worker).

In this specific factual context, Plaintiff asserts that she believed, at the time that she was forwarding emails to Deters, that there was some form of unlawful discrimination taking place at SEP and Saint Elizabeth.  However, she has failed to present any evidence showing that Defendants knew she had acted on this belief.  At the time that Plaintiff was fired, Defendants knew that Plaintiff had medical and scientific concerns about the COVID-19 vaccine, and SEP and Saint Elizabeth's vaccination policy.  Additionally, Defendants knew that Plaintiff had consulted Deters about something related to the

vaccination policy, but when Plaintiff was asked about those communications, she declined to provide any information.  The fact that Plaintiff requested and received exemption from the vaccination requirement is further evidence that the Defendants had no reason to believe that Plaintiff's opposition to the policy was based on moral or religious grounds.  There is no evidence to support the inference that Defendant's knew that Plaintiff had engaged in protected activity in response to what she believed to be unlawful conduct.[4]

Because Plaintiff has also failed to demonstrate a genuine issue of material fact on the question of notice, she has failed to meet her initial burden of making a prima facie showing of retaliation.  Therefore, Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim is **granted.**

### C.    Retaliation under the Kentucky Civil Rights Act

Defendant also moves for Summary Judgment on Plaintiff's claim for retaliation under the KCRA.  (Doc. # 52-1 at 22).  "Unlawful retaliation under the KCRA is interpreted consistently with retaliation under federal law."  *Hamade v. Valient Government Services, LLC*, 5:18-cv-166-TBR, 2019 WL 1410904 (W.D. Ky. Mar. 28, 2019) (citing *Brooks v. Lexington-Fayette Urban Cnty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004)); *see also Benningfield v. Fields*, 584 F.3d 731, 739–40 (Ky. 2019).  This means that the success of Plaintiff's KCRA retaliation claim is contingent on the success of her Title VII and ADA retaliation claim.  Because Plaintiff's Title VII and ADA retaliation claim failed, *supra* §

---

[4]    Plaintiff also urges this Court to draw a "negative inference" from the fact that Defendants have not asserted advice of counsel as a defense.  (Doc. # 58 at 14–15).  The Court declines to draw this inference.  To do otherwise this Court would effectively be penalizing the Defendants for declining to waive their attorney-client privilege.

III(B), her KCRA retaliation claim must meet the same fate.  Accordingly, Defendants'
Motion for Summary Judgment on Plaintiff's Kentucky law retaliation claim is **granted**.

### D.      Discharge against public policy

Plaintiff's Kentucky law claim for discharge against public policy rests on the
allegations that her discharge was due in part to the fact that Defendants wanted her to
waive her attorney-client privilege and disclose her communications with Deters.  (Doc. #
31 ¶¶ 97–104).  Plaintiff's assertion of this cause of action is misplaced, the Kentucky tort
of wrongful discharge does not apply in this context.  Kentucky courts have repeatedly
stated that "[t]he tort of wrongful discharge of a 'terminable-at-will' employee is a relatively
recent development, having arisen out of carefully crafted exceptions to the common law
doctrine that 'an employer may discharge his at-will employee for good cause, no cause,
or for a cause that some might view as morally indefensible."  *Hill v. Kentucky Lottery
Corp.*, 327 S.W.3d 412, 420 (Ky. 2010) (quoting *Firestone Textile Co. Div. Meadows*, 666
S.W.2d 730, 731 (Ky. 1984)); *see also Marshall v. Montaplast of North America, Inc.*, 575
S.W.3d 650, 652 (Ky. 2019) (noting the "'narrow public policy exception' to the terminable-
at-will doctrine"); *Grzyb v. Evans*, 700 S.W.2d 399, (Ky. 1985) (characterizing this tort as
an "exception to the terminable-at-will doctrine) (discussing *Firestone*, 666 S.W.2d at
733)).    Plaintiff has not cited any Kentucky cases which have expanded this doctrine
beyond the at-will employment context, nor is this Court aware of any.  (Doc. # 58 at 30–
31).  Therefore, the Defendants' Motion for Summary Judgment on wrongful discharge is
**granted**.

### E.    Breach of Contract

Plaintiff alleges that SEP breached the Employment Agreement (Doc. #50-1) when SEP terminated her employment "purportedly for cause, when no cause in fact existed . . ." and when SEP insisted on the enforcement of the contract's non-compete clause, even though she was terminated without cause.  (Doc. # 31 ¶¶ 107–108).  Defendants seek summary judgment in their favor on this claim.  (Doc. # 52-1 at 30–33).

#### 1.    *There was Cause for Plaintiff's Discharge*

Plaintiff's Employment Agreement with SEP requires at least ninety days written notice be given before either party can end Plaintiff's employment with SEP.  (Doc. # 50-1 at 7).  However, SEP has the right to terminate Plaintiff's employment immediately upon written notice if the termination was "for cause."  (*Id.*).  Defendants point to four contractual provisions in the agreement which allowed them to terminate Plaintiff for cause.  (Docs. # 52-1 and 50-44).  The Court will address each ground for removal in turn.

#### i.    *Section 10.2(h)—Misappropriation of SEP Property*

The first ground for termination asserted in Plaintiff's termination letter was section 10.2(h) of the Employment Agreement.  (Docs. # 52-1 at 32–33 and 50-44).  The letter states that, pursuant to SEP's Electronic Forms of Communication and Information Policy, and Section 106 of the Associate Handbook, internal emails are the property of SEP.  (*Id.*).  By forwarding those emails to Deters, Plaintiff misappropriated SEP property.  Plaintiff argues that Section 10.2(h) does not support her termination because Prichard admitted that it would not be a violation of either policy to communicate with an attorney to obtain information about one's rights.  (Docs. # 53 at 35 and 58 at 34)).  Further, "SEP

had no information that this [i.e., seeking information about her rights] was not, in fact, what [Plaintiff] was doing . . . ."  (Doc. # 58 at 34).

Plaintiff's argument is unpersuasive.  Seeking information about one's rights and forwarding confidential documents to a third-party are not the same thing.  Further, Plaintiff's argument that SEP did not have evidence that Plaintiff was not seeking information about her rights, is irrelevant.  Nowhere in the Employment Agreement, the Electronic Forms of Communication and Information Policy, or Section 106 of the Associate Handbook, does it say that SEP must know an employee is not seeking information about their rights before they may be found to have violated either policy. (*See* Docs. # 50-1, 50-45, 50-47).  Further, Plaintiff had the opportunity to explain to Prichard why she had sent the emails to Deters, both in her apology letter and afterwards. However, she instead chose not to mention that she was seeking legal advice in her apology letter, and thereafter withheld certain information claiming that those conversations were privileged.  (Doc. # 50-36).  Plaintiff never told anyone at SEP that she believed the policy was illegal, or that she merely wanted legal advice about her civil rights.  By forwarding these emails to Deters, Plaintiff violated SEP's Electronic Forms of Communication and Information Policy, and the policy set forth in Section 106 of the Associate Handbook.  Thus, grounds for termination existed under Section 10.2(m) of the Employment Agreement.

### ii.    Section 10.2(m)—Violation of SEP or Saint Elizabeth Procedures

The second ground for termination set forth in her termination letter is Section 10.2(m).  (Docs. # 52-1 at 31–32 and 50-44).  Plaintiff may be terminated for cause if "[u]pon investigation by SEP, [Plaintiff] is deemed by SEP to be disruptive pursuant to the

Medical Staff Code of Conduct Policy of SEP or [Saint Elizabeth], or as otherwise solely determined by SEP, [Plaintiff] violates SEP or [Saint Elizabeth] policies or procedures." (Doc. #50-1 at 9).  With respect to Section 10.2, Plaintiff first reiterates her argument that Prichard admitted it would not violate SEP policies to seek information about one's rights, which has already been rejected.  (Doc. # 58 at 36); *supra* § III(E)(1)(i).  Additionally, Plaintiff takes exception to the "solely determined" clause in Section 10.2(m).  Plaintiff argues that the "solely determined" clause of Section 10.2(m) is ambiguous, as it is unclear whether it is solely up to SEP which policies to apply, or it is solely up to SEP if the policies have been violated.  (Doc. # 58 at 36).  Accordingly, this provision should be construed in favor of Plaintiff; "[d]oing so places the 'sole determination' language as modifying that portion of 10.2(m) in relation to whether to apply SEP or [Saint Elizabeth] policies, but not to whether a policy is violated, as Defendants argue."  (*Id.*).

Before a court can consider different interpretations of a contract, it must first determine that the contract is ambiguous.  *See Jackson Hospital Corp. v. United Clinics of Kentucky, LLC*, 545 S.W.3d 327, 332–333 (Ky. Ct. App. 2018).  "In the absence of ambiguity a written instrument will be strictly enforced according to its terms."  *Id.* (quoting *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965)).  "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (citations omitted).

Here, Section 10.2(m) is not ambiguous, thus it should be enforced strictly according to its terms.  The word "or" prior to the "solely determined" clause clearly indicates that this clause is meant to apply to the determination of whether a physician

24

has violated SEP or Saint Elizabeth policies or procedures. (Doc. # 50-a at 9) ("*or* as otherwise solely determined by SEP, Physician violates SEP or [Saint Elizabeth] policies or procedures") (emphasis added). With respect to Section 10.2(m), SEP determined in good faith that Plaintiff had violated SEP's Electronic Forms of Communication and Information Policy, Section 103 of the Associate Handbook, her Confidentiality/Non-Disclosure Agreement with SEP, and Section 106 of the Associate Handbook. (Doc. # 50-44). Therefore, SEP had cause to terminate Plaintiff under Section 10.2(m).

### iii.    Section 10.2(n)—Disruptive & Unprofessional Conduct

In Plaintiff's termination letter, Defendants also cited Section 10.2(n) of the Employment agreement. (Docs. # 52-1 at 31–32 and 50-44.). Plaintiff may be terminated if she engages in "disruptive" or "unprofessional" conduct. (Doc. # 50-1 at 9). Defendants determined that "unauthorized disclosure" of the emails to "a law office which already had sued SEP and which was actively preparing to sue SEP again . . . constituted disruptive and unprofessional conduct . . . ." *Id.* Plaintiff argues that any disruption caused by her disclosure of the emails was minimal, as SEP's corporate representative was unable to point to any diverted resources, Prichard acknowledged the disruption would have occurred with or without Plaintiff's disclosure of emails, and SEP and Saint Elizabeth have been sued thousands of times over the past ten years. (Doc. # 53 at 36).

Plaintiff's arguments on this point are also deficient. Even if this Court were to accept Plaintiff's argument that her conduct was not disruptive enough to justify her termination under Section 10.2(n), she does not address the fact that SEP also determined that her conduct was "unprofessional." (Doc. # 50-44). Cause exists to terminate any SEP employee who engages in conduct deemed to be unprofessional by

SEP.  (Doc. # 50-1 at 9).  Therefore, SEP had cause to terminate Plaintiff once they determined that her conduct was unprofessional.

### iv.    Section 10.2(q)—Duty of Loyalty

Finally, Plaintiff was also terminated because her conduct was deemed by SEP to be a breach of the duty of loyalty she owed to SEP under Section 10.2(q) of her employment agreement.  (Docs. # 21-1 at 30–31 and 50-44).  SEP physicians may be terminated for cause if SEP makes a good faith determination that the physician "has breached a fiduciary obligation or duty of loyalty or failed to act in a manner consistent with SEP's values, mission or Code of Conduct."  (Doc. # 50-1 at 9).  Plaintiff argues that it is not a violation of the duty of loyalty for an SEP employee to contact a lawyer about SEP practices which the SEP employee believes is illegal.[5]  (Doc. # 53 at 37).  Plaintiff's statement here is not incorrect, Prichard admitted as much.  (*Id.*).  However, this argument is still unpersuasive because, as has been explained, Plaintiff never communicated with SEP that she believed their vaccination policy was illegal.  *Supra* III(E)(1)(i).

Plaintiff also argues that no cause existed to terminate her because nobody at SEP could have had a good faith belief that she violated her duty of loyalty.  (Doc. # 58 at 35).  Plaintiff interprets the good faith determination provision, Section 10.2(q), as requiring that the determination be made objectively with "honesty or lawfulness of purpose."  (*Id.*).  Plaintiff argues that Defendants could not have believed, in good faith, that Plaintiff violated her duty of loyalty because "retaliating against someone for engaging in

---

[5]    Plaintiff's argument on this point is set forth in her Motion for Summary Judgment, (Doc. # 53), which she incorporated by reference into her Response to Defendants' Motion for Summary Judgment, (Doc. # 58).  In her Response, Plaintiff references Section "10.2(n), involving disloyalty . . . ."  (*Id.* at 37).  The Court presumes that this is a typographical error, and that Plaintiff meant to refer to Section 10.2(q) given that Section 10.2(n) does not reference duties of good faith or loyalty.  (Doc. # 50-1 at 9).

statutorily protected activity" is neither a lawful purpose nor is it honest. (*Id.*). Even if the Court were to accept Plaintiff's questionable interpretation of Section 10.2(q), her premise that she was retaliated against for engaging in statutorily protected activity has already been rejected. *Supra* § III(B). For that reason, Plaintiff's argument here also fails. SEP had cause to terminate Plaintiff under Section 10.2(q) of the Employment Agreement.

### 2.    *Enforcement of the non-compete*

Finally, Plaintiff asserted that SEP breached the Employment Agreement by "insisting on performance of the non-competition clause that was only enforceable due to the inappropriately invoked termination for cause." (Doc. # 31 ¶ 108). The non-compete clause of the Employment Agreement does not take effect if Plaintiff is terminated without cause. (Doc. # 50-1 at 11). Because Plaintiff was terminated for cause, SEP did not breach the contract by insisting on compliance with the non-compete clause. *Supra* § III(E)(1). Accordingly, Defendants' Motion for Summary Judgment on breach of contract is **granted**.

### F.    **Tortious Interference**

Plaintiff claims that Colvin and Saint Elizabeth tortiously interfered with her Employment Agreement with SEP when Colvin, acting on behalf of Saint Elizabeth, "took action and made statements to Prichard that did in fact cause a breach of the [Employment Agreement by SEP]." (Doc. # 31 ¶ 111). To successfully assert a claim for tortious interference with contractual relations, the Plaintiff must show, among other things, "that [Defendants'] actions in fact caused a breach of the contract . . ." *Seger Enterprise, Inc. v. Town & Country Bank and Trust Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6–7 (Ky.

Ct. App. 2012)).  Because SEP did not breach the Employment Agreement Plaintiff cannot prove that Defendants caused a breach.  *Supra* § III(E).  Therefore, judgment in favor of Defendants on this claim is **granted**.

### G.    Declaratory Judgment

Plaintiff also seeks a declaratory judgment stating that the non-compete clause of her Employment Agreement is not enforceable, and that her termination was without cause.  (Doc. # 31 ¶¶ 114–118).  Summary judgment is warranted in favor of Defendants on this point because, as has already been explained, Plaintiff was terminated for cause and the non-compete clause was enforceable.  *Supra* § III(E).

## IV.    REMAINING MOTIONS

Plaintiff moved for Partial Summary Judgment in her favor.  (Doc. # 53).  Because the Court has granted Summary Judgment in favor of Defendants, Plaintiff's Motion for Summary Judgment will be denied.    Accordingly, Plaintiff's Motion is **denied.** Additionally, Defendants' Motion to Exclude the testimony of Robb Stokar (Doc. # 51), and their Motion to Strike the declaration of Robb Stokar (Doc. # 59), are **denied as moot**.

## V.    CONCLUSION

Thus, for the reasons articulated herein, **IT IS ORDERED** that:

(1)    Defendants' Motion for Summary Judgment (Doc. # 52) is **GRANTED**;

(2)    Plaintiff's Motion for Partial Summary Judgment (Doc. # 53) is **DENIED**;

(3)    Defendants' Motion to Exclude (Doc. # 51) is **DENIED as moot**;

(4)    Defendants' Motion to Strike (Doc. # 59) is **DENIED as moot**;

(5)    This matter is **STICKEN** from the Court's active docket; and

(6)     **Judgment** in favor of Defendants will be entered contemporaneously herewith.

This 23rd day of April 2025.



Signed By:

<u>David L. Bunning</u>

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2022\22-111 Order re Cross MSJs.docx